[Opinion delivered June 20, 1882.]

---

CAMPBELL & CLOUGH V. GEO. F. ALFORD ET AL.

(Case No. 4514.)

1. BILL OF LADING — CONSIGNMENT. — B. having received advances from C. & C., of Galveston, on the faith of his agreement to ship them certain goods, delivered the goods to a carrier to be transported to Liberty, the carrier executing duplicate bills of lading specifying that the goods were to be delivered to the care of W. at Liberty, to be forwarded to C. & C. After delivering without indorsement one of these bills of lading to C. & C., B. procured from A. & Co. advances on the same goods, they having inquired of W., and being informed by him that he held the goods subject to the order of B. W. had never seen or had notice of the bill of lading. *Held,*

(1) That the rights of the pledgees attached when the goods were delivered to the carrier under a bill of lading declaring that the goods were to be forwarded to them.

(2) That the delivery of such a bill of lading to the pledgees whilst the goods were in transit, although without indorsement, was a sufficient consummation of the agreement, if so intended.

(3) That thereafter the rights of the pledgees were superior to those of the original owner, or any acquired through him, and this, too, although the warehouseman and forwarding agent at Liberty, having no notice of the bill of lading, held the goods subject to the order of the shipper.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

*Mills & Tevis,* for appellants.

No briefs for appellee.

STAYTON, ASSOCIATE JUSTICE. — Campbell & Clough brought this action to recover possession of certain cotton, wool and hides.

In September, 1871, Clough, one of the members of the firm of Campbell & Clough, who were commission merchants doing business in the city of Galveston, was at the place of business of one Busby in Tyler county, Texas, and Busby requested him to furnish to him a lot of bagging and ties, and to pay for the same. Busby promised

to ship to Campbell & Clough the property in controversy, which was pointed out to Clough at the time, the same being then packed and marked for shipment.. In accordance with the request of Busby, Campbell & Clough sent to him the bagging and ties, which in value amounted to $187.62. In consideration of the shipment to them of the cotton, wool and hides, Campbell & Clough also agreed to accept for Busby on several small amounts of indebtedness of Busby to other merchants in Galveston.

On the 15th of September, 1871, Busby shipped the cotton, wool and hides by a wagon to Liberty, Texas, there to be delivered to one Wrigley, to be forwarded by water to Campbell & Clough at Galveston, for which the wagoner gave a bill of lading as follows:

"Received, Woodville, Sept. 15th, 1871, of J. W. Busby, four bales cotton marked B, one lot beef hides and deer-skins marked B, about five hundred pounds; twelve hundred pounds of wool, which I am to deliver to care of James Wrigley, Liberty, Texas, to be forwarded to Messrs. Campbell & Clough, Galveston.

(Signed in duplicate.)                      " JOHN HAUKS."

On the 10th of September, 1871, Busby delivered, without indorsement, to Campbell & Clough, at Galveston, the foregoing bill of lading.

Busby never drew on Campbell & Clough in favor of the Galveston merchants to whom he was indebted for the sums for which they had agreed to accept; but three or four days after the delivery of the bill of lading to them, he requested them to accept for him to the extent of about two thousand dollars, which they declined to do, whereupon he became angry, and requested them to redeliver to him the bill of lading, which they refused to do.

Busby then applied to Alford & Veal to advance money to him, and also to assume a debt which he owed to Heidenheimer & Bro., stating to them that he had the cotton, wool and hides in the warehouse of Wrigley at Liberty. They telegraphed to Wrigley and ascertained that the property was there, and they then made the advance and assumed the liability as requested by Busby, on the faith of the property which was to be shipped to them by Wrigley. This occurred on or after the 26th of September. The property was shipped from Liberty under a bill of lading in which Alford & Veal were consignees, and they received the property when it arrived at Galveston, and this suit was brought to recover it; a writ of sequestration was sued out, and the property was seized and afterwards replevied by Alford & Veal.

The property in controversy was received by Wrigley at Liberty

on the 25th of September, 1871, and he shipped the same to Alford & Veal on the 28th of same month by instruction of Busby. It seems that Wrigley never saw the duplicate bill of lading signed by Hauks.

Busby was made a party defendant; there was a trial, and judgment in favor of Campbell & Clough against Busby for the amount of his indebtedness, and a judgment in favor of Alford, the appellee.

The court in effect charged the jury that if appellees, without notice of appellants' claim, in good faith made advancements to Busby, and assumed indebtedness for him, upon the faith of and relying upon the property to secure them, that then if the property came into their possession, they would find for the appellee. The jury so found, and the charge of the court is assigned as error.

The real question in this case is, Do the facts show a valid pledge by Busby to Campbell & Clough of the property in question to secure the advances made by them? The question of pledge or no pledge depends upon the intention of the parties and the fact of such delivery as consummated that contract. There was an agreement to pledge the property while it was at Woodville, and upon the faith of that agreement Campbell & Clough shipped to Busby the bagging and ties; and the subsequent delivery of the bill of lading to Campbell & Clough, while the property was in transit, sufficiently shows Busby's intention to consummate that agreement. This Busby recognized in his effort to repossess himself of the bill of lading when Campbell & Clough declined to make advances to him other than they had originally agreed to make; besides, the bill of lading contained the most unequivocal evidence of such intention. The intention was complete and was evidenced by the agreement and acts of the parties.

Was there such delivery as to make the pledge complete?

In commercial transactions bills of lading, to a very large extent, are regarded as the representatives of the goods covered by them, and where they are indorsed and delivered with the intention of passing the title to them, it is a symbolic or constructive delivery of the goods themselves; and in many cases it has been held that the delivery of the bill of lading without indorsement or assignment, in deference to the mutual intent of the parties, is a sufficient constructive delivery. Schouler on Bailments, 179.

It would seem that an indorsement or assignment of the bill of lading would be necessary where the person to whom it is delivered is not recognized upon the face of the bill of lading as the person entitled to the ultimate possession of the goods; but where such

recognition exists upon the face of the bill of lading, there is much less reason for holding that an assignment is necessary. .

The general rules applicable to the subject are thus stated: " Delivery, in order to be effectual, should be followed by an acceptance of possession; and methods of delivery and acceptance differ, according to the subject matter and the local situation of the thing. But constructive delivery and acceptance are now much favored in such transactions. The transfer of the bill of lading of a ship at sea, or the delivery of a warehouse key, have long been esteemed sufficient for legally transferring possession of the thing so symbolized. And so, in modern times, the delivery in pledge of bills of lading of goods on transit, whether inland or by water, usually suffices to make the pledgee's title good against the world. Warehouse receipts, and the receipts of wharfingers or other hired custodians, are also, when expressed in negotiable form, permitted, in a variety of instances, to be turned over by way of symbolical delivery of the goods on storage which they represent. Even the delivery of such muniment without a formal indorsement or assignment has, in deference to mutual intent and the loose usages of business, been frequently upheld as constructively sufficient." Schouler on Bailments, 179.

In the case of Petitt & Co. v. National Bank, 4 Bush, 334, it was held that property *in transitu* may be pledged by the delivery of bills of lading therefor, and that such delivery is a constructive delivery of the property by which a lien in the way of pledge was created, and that such lien was superior to an attachment lien upon the property.

In the case of Whitney v. Tibbitts and another, 17 Wis., 370, it was held that the delivery of a warehouse receipt, without indorsement, constituted a sufficient delivery of the property to sustain the pledge against an attaching creditor; and this notwithstanding the receipt did not run to bearer, but stated that the property was deliverable only on return of the receipt.

In National Bank v. Kelly, 57 N. Y., 34, it was held that the indorsement and delivery of a bill of lading as collateral security for paper discounted, operated the same as the delivery of the goods, and that the bank to which the same was delivered could hold the property to secure its debt, against the consignee or any other person. To the same effect is the case of Marine Bank v. Fiske *et al.*, 71 N. Y., 353.

This question is illustrated by the following cases: Stanton v. Eager, 16 Wend., 467; Dows *et al. v.* National Exchange Bank, 91

U. S., 618; Boynton *v.* Payson, 67 Me., 587; Nolbrook *v.* Wright, 24 Wend., 168; Adoue *v.* Seeligson & Co., 54 Tex., 595.

There was a valid and binding agreement to ship the property in question to Campbell & Clough to secure the debt made upon the faith that such shipment would be made, and the bill of lading evidenced the fact that the property was delivered to the carrier in consummation of that agreement.

After such delivery it must be held that the right of Busby to the possession of the property or to its control had ceased, and that the carrier and warehouseman who subsequently had possession of the property held the same for Campbell & Clough; and whether the warehouseman at Liberty ever saw the bill of lading which the carrier gave is unimportant; for the rights of Campbell & Clough attached to the property when the same was delivered to the carrier, under the bill of lading, which in express terms declared that the property was "to be forwarded to Messrs. Campbell & Clough, Galveston;" for knowledge or want of knowledge upon the part of Wrigley, the warehouseman, who was expected to ship the property by steamer to Galveston, could not reinvest Busby with the right to the possession or control of the property.

The bill of lading executed by the carrier was delivered to Campbell & Clough, while the property was in transit from Woodville to Liberty, which presents just the case, in its strongest phase, in which the bill of lading is considered to represent the property; for the reason that the condition of the property was such at the time, that no actual delivery, in the nature of things, could then be made.

When Wrigley received the property, he received it under the intention of Busby that it should be shipped to Campbell & Clough, and in so far as Busby is concerned, it must be held that Wrigley held the property for Campbell & Clough, and this whether Wrigley ever saw the bill of lading or not, for such was the manifest intention of Busby. The fact that Alford & Veal may have been ignorant of the pledge to Campbell & Clough cannot affect their right, which being prior in time must be held superior in law or in equity.

For the error in the charge of the court below, its judgment must be reversed and the cause be remanded.

REVERSED AND REMANDED.

[Opinion delivered June 20, 1882.]