SAM LAZARUS v. HENRIETTA NATIONAL BANK ET AL.

No. 6382.

1. **Chattel Mortgage—Parol Agreement.**—C. & A. being insolvent agreed to execute deeds of trust in favor of their principal creditors, agreeing upon the order of preference. Before the execution of any of the trust deeds C. & A. change their mind as to the preference and execute a deed of trust to secure another, which deed was placed upon record before any of the others which were duly executed a few hours later. *Held:*

1. The parol agreement to give a preference lien upon cattle in the range did not affect the rights of the holder of the chattel mortgage first executed and placed on record.

2. The parol agreement being without consideration no damages could be recovered for its breach.

3. Chattel mortgages are governed by statute and a parol lien unaccompanied by possession does not affect the property, and hence notice of it would not affect a subsequent incumbrance.

2. **Instruments Executed at Same Time.**—Two debtors owing the same creditor, one a security for the other on part of the indebtedness, at the same time execute chattel mortgages in favor of the creditor. It is shown that the debt upon which one is surety is secured by the mortgage made by the principal debtor. It is shown also that such security is valuable and probably ample. Funds of the security come into the hands of the creditor. *Held,* that the creditor must exhaust the security held from the principal before he can apply as matter of right the money of the surety to the debt

3. **Application of Payments.**—When money of a firm was paid with reference to the release of a mortgage held by the creditor such purpose is a sufficient designation of the payment to require that the money be applied upon the secured debt.

APPEAL from Clay. Tried below before Hon. P. M. Stine.

A statement of the case appears in the opinion.

*Davis & Garnett,* for appellant. — 1. The agreement as to the order

·of preference in the mortgages, though only verbal, was binding and ;should control the mortgages executed under it.   Jones on Mortgages, ,secs. 608, 1689; 2 Pomeroy's Eq., sec. 719 and note; Rhoades v. Canfield, 8 Paige, 345.

2.   The appellee had notice of the parol agreement and took subject to it.   2 White & Tudor's Leading Cases in Eq., 4 ed., 123; 2 Smith's Leading Cases, 7 ed., 711.

3.   On application of payments.   Bray v. Crain, 59 Texas, 649; Taylor v. Coleman, 20 Texas, 776; 2 Daniel on Neg. Inst., secs. 1250 and 1253; 2 Parsons on Notes and Bills, 222, 224, 227; Hanson v. Rounsavell, 74 Ill., 238; Terhune v. Colton, 12 N. J. Eq., 233.

*J. A. Carroll* and *Robertson & Coke*, for appellee.—As to notice to directors.   1 Morawetz on Corps., sec. 540c; Waynesville National Bank v. Irons, 8 Fed. Rep., 9, and note quoting numerous authorities.

As to notice to trustee.   2 Pomeroy's Eq., secs. 670–1; Myers v. Ross, 3 Head (Tenn.), 60; Curtis et al. v. Leavitt, 15 N. Y., 194; Comrs. v. Thayer, 94 U. S., 644–5, approving Curtis v. Leavitt.

As to pre-existing debt as consideration for promise to give a mortgage. 1 Parsons on Con., 390–8 (old edition); Anson on Con., 85; Bishop on Con., secs. 81, 90–3.

As to effect of notice of intention to make a mortgage.   1 Jones on Mort., sec. 580; Warden v. Adams, 15 Mass., 233.

As to application of payments.   Munger on Application of Payments, 75, 80, 86, 101.

WALKER, ASSOCIATE JUSTICE.—Appellant insists that his lien should have priority over the deed of trust to secure the bank, upon the principle that where several mortgages are executed together by the same party in accordance with an agreement as to the order in which they shall rank in priority, that such agreement will control regardless of the order in which the mortgages were actually signed.

Appellee insists that although there may have been such an agreement yet in this case the mortgages were not in fact executed together, but that the mortgage to West, trustee, for the benefit of appellee was executed before the others and with the intent on part of the makers to give the appellee preference and in violation of the agreement.

While there is great confusion in the testimony to this point, yet taking the testimony of West and Carter, who distinctly testify to the reason and motives for the change of intention on part of Curtis & Atkinson and to the fact that the deed of trust to West was in fact signed by Curtis & Atkinson and was delivered to W. S. Ikard, vice-president of the bank and acting for it, some hours before the others were signed, we can not

set aside the findings of the court of such priority of execution and of the intent that it should rank before them.

The circumstances detailed by these witnesses and especially those affecting the change of purpose and to the manner of its delivery, etc., are persuasive and adding to the weight of their testimony against the adverse testimony of Lazarus, Curtis, and E. F. Ikard.

Considering it a fact that the deed of trust to West was executed before the others, and with intent that it would have priority, the questions remain whether the beneficiary had notice of the prior agreement, and the effect of it if shown.

There is no testimony to any participation in behalf of the bank in the negotiations, nor any assent to the parol agreement made. W. S. Ikard, the vice president, who received the security, testified that he knew nothing of the agreement until after this suit was filed. The court held that notice to West, the trustee, and to E. F. Ikard, a director, was not notice to the bank. But what would be the effect if notice was shown? The deed of trust to West being first in date and first of record it would not be affected by any subsequent conveyances. Its validity if at all will be attacked by the prior parol agreement.

It has been held that a mortgage upon personal property without delivery can not be made by parol. 31 Texas, 250, Gay v. Hardeman. And chattel mortgages as to their execution and effect are regulated by statute. Rev. Stats., 3190b. Whatever effect as between Curtis & Atkinson and Lazarus the parol agreement had, it could not affect the property. If valid the parties could sue for its violation. But as there was no consideration paid or promised by Curtis & Atkinson damages could not be had nor specific performance enforced. It follows then that appellant took no rights in or to the stock of cattle as security by the agreement which could be enforced. We conclude therefore that the matter of notice is immaterial.

But the rights of the parties upon the facts found by the court are not equitably adjusted in the decree.

It is found by the court that the note for $20,000 made July 19, 1887, and secured by the deed of trust to West, was made to cover the estimated indebtedness of Curtis & Atkinson to the bank. In fact, the amount was ascertained to be $23,481. In addition to this they were sureties of W. S. Ikard on two notes held by the bank, one for $5000 and the other for $3500. Further, copying from the findings:

"About the 25th August, 1887, and after the bank had closed   *   *   * and while it was under the control of the bank examiner, the sum of $10,000 was paid by Curtis & Atkinson out of their partnership funds and with the understanding with the directors of the bank that when the bank opened, and the said Curtis & Atkinson secured the remainder of

their indebtedness to the bank, the said mortgage for $20,000 should be transferred to any party that might be named by said Curtis & Atkinson.

"That said bank never opened and the remainder of the indebtedness to said bank was never secured to said bank by them. That said bank held as further security for the firm indebtedness of Curtis & Atkinson an obligation due to Curtis & Atkinson from one Glasgow for the sum of $10,000, less $2112, deducted by agreement of parties. Upon such obligation, after the bank had suspended, and before the receiver took charge, the said Glasgow paid into said bank the sum of $5564, and the further sum of $2324 was deposited in a bank in Fort Worth by Glasgow, to remain there till June 1st, 1888, to secure said Glasgow against any loss in cattle up to said date, said obligation having been executed by Glasgow to said Curtis & Atkinson for purchase money of said cattle, and Curtis & Atkinson having agreed to credit on said contract any loss on said cattle that might occur up to June 1st, 1888.

"That Curtis & Atkinson made no application of either of said payments to any particular part of the partnership indebtedness.

*    *    *    *    *    *    *    *    *

"That in addition to the above indebtedness of W. S. Ikard (for which Curtis & Atkinson were sureties), the said Ikard, together with E. F. Ikard, owed said bank the sum of $4425, making a total indebtedness of $12,925 and interest, upon which there had been a payment of $3000. To secure the remainder of said indebtedness the said Ikard had mortgaged property of the market value of $12,000. That attachments have been run on said property by the creditors of the Ikards since the said securities have been given to the bank.   *   *   *   *   *   *

"The court finds that the indebtedness of the firm of Curtis & Atkinson to the bank (outside of the W. S. Ikard two notes) amounts to the sum of $23,481, $20,000 of which is secured by the note and trust deed. That their firm indebtedness as security for W. S. Ikard amounted to $8500, as shown above. I applied $11,981 of the $15,565 paid by Curtis & Atkinson on the $11,981 not secured by said $20,000 trust deed; the remaining $3583 was applied on said $20,000 note and mortgage, leaving a balance of $16,417 due on said note and mortgage.

In the conclusions of law is the following: "That the payments made by Curtis & Atkinson to the bank having been made from the partnership funds of said Curtis & Atkinson, the same must be appropriated to the partnership debts."

The fifth, sixth, and seventh assignments of error were as follows:

"Fifth. The court erred in applying any portion of the ten thousand dollars paid by Curtis & Atkinson to the Henrietta National Bank to the two notes of W. S. Ikard, aggregating eight thousand five hundred dollars, upon which Curtis & Atkinson were the sureties of said Ikard.

"Sixth. The court erred in applying any portion of the five thousand five hundred and sixty-four dollars collected of Glasgow to the two notes of W. S. Ikard upon which Curtis & Atkinson were sureties.

"Seventh. The court erred in not applying the ten thousand dollars paid by Curtis & Atkinson to the Henrietta National Bank towards the satisfaction of the mortgage executed to West to secure said bank."

These assignments question the appropriation of the funds of the firm to the payment of the Ikard indebtedness. Bearing upon this we find in the record the details of the execution of the trust deed by W. E. Ikard to secure his indebtedness to the bank. At the same time and place at which Curtis & Atkinson executed their trust deed to West, Ikard also executed his deed of trust, both to secure the bank. Curtis was president and W. E. Ikard vice-president of the bank. Curtis when proposing to execute the note and security was assisted by Ikard in computing the amount, and it was estimated by them at $20,000. This was the indebtedness on account of which the probable criminal prosecution was feared—the motive to the act. The security debts on which Ikard was principal were not of the estimated items. Upon the estimate reached of the amount, the note was executed to cover it with the deed of trust to secure it. Ikard as vice-president, acting for the bank, received the note and trust deed. As part of the same transaction Ikard made a deed of trust to secure his indebtedness, including the notes on which Curtis & Atkinson were his sureties. This security was delivered to Curtis, the president of the bank. These two trust deeds were made at the same time and to secure two separate debts by different parties—the one by Curtis & Atkinson, the other by Ikard. The bank was represented in each part of the transaction and no reason appears why the agreement as to the debts covered by the two trust deeds should not be valid and enforced in applying the securities to the indebtedness intended. If so the bank should go upon the Ikard security before attempting collection from the firm of Curtis & Atkinson.

It is evident from the testimony and it is substantially in the finding of facts by the court that the payment of the $10,000 made in August, 1887, was upon the note and mortgage of July 19, as it was accompanied by the expressed intent that when full payment should be made the security should be transferred as directed, etc. That the contingency expected never came did not divert the payment from the purpose intended, and it discharged so much of the indebtedness of Curtis & Atkinson. The holding otherwise is in conflict with the facts ascertained by the court. However, the final designation by the court for the application of the firm assets to firm debts if applied will reach substantial justice.

Touching the Glasgow claim and the funds realized upon it they were not appropriated to any particular part of the indebtedness of the firm.

The payment of $10,000 made in August, 1887, must be credited upon the firm indebtedness of $23,481, leaving $13,481 unpaid.

The bank while required first to exhaust the security furnished by Ikard and accepted by it would have the right to apply, if necessary, the funds realized upon the Glasgow claim ($5664) to any balance remaining of the Ikard indebtedness.

The decree should perpetuate the injunction restraining any sale for any amount beyond the sum of $13,481 and interest, should dissolve the injunction as to $7918, and as to the amount realized upon the Glasgow claim the injunction should be held in force until it be shown that the money realized upon the Ikard securities and said sum of $5564 were exhausted upon the Ikard indebtedness. And upon it being shown to the court below by satisfactory proof that said sum of $5564 or any part thereof was used upon the Ikard indebtedness after the sale or disposition of the Ikard securities, then for said sum or so much thereof as may have been so used after realizing upon the said securities the injunction should then be dissolved.

No note is taken of the Glasgow claim not realized. If additional funds should be realized upon it they are subject to like disposition with those in hand.

The costs should have been adjudged against the defendants, for the complainant obtains partial relief.

The judgment below is reversed and rendered in accordance with this opinion.

*Reversed and rendered.*

Opinion December 21, 1888.