PRENDERGAST, SMITH & CO. V. A. C. WILLIAMSON ET AL.

No. 292.

**Verbal Lien on Personal Property— Bona Fide Purchaser—Notice — Bills of Lading.**— Appellants advanced money to Williamson with which to buy cotton, with the verbal understanding that the cotton bought should stand pledged for the money advanced. Afterward a quantity of the cotton so bought by Williamson was contracted to be sold to Bessling & Co., with the agreement by appellants, Williamson, and Bessling & Co. that the money should be paid to appellants. Williamson took bills of lading for the cotton, naming Bessling & Co. as consignors and consignees. Instead of sending the bills of lading to appellants, as he had agreed to do, he procured an advance upon the cotton from the First National Bank of Corsicana, to which he executed his draft on Bessling & Co. with the bills of lading attached. Bessling & Co. declined to pay the draft and set up no further claim to the cotton. After the institution of this suit the cotton was delivered by the receiver of the railway company to said bank upon the bills of lading, and sold for its account for less than the amount advanced by it to Williamson. In an action by appellants for the value of the cotton, *Held:*

1. If appellants had a verbal lien which might be good as between the parties, yet, as they were not in actual possession of the property, such lien would not, under article 3190b, Sayles' Statutes, be valid as against the First National Bank, which was a subsequent purchaser in good faith with no actual notice of appellants' claim.

2. The fact that the bills of lading were in the name of Bessling & Co. was not sufficient to put the bank upon notice of appellants' claim.

3. As the bills of lading were never delivered to Bessling & Co., nor to appellants, the former never secured title to the property by a perfected purchase, and the latter never secured a perfected lien; for they had neither actual nor symbolical possession of the property, or any instrument of writing whatever showing a valid lien.

4. Bills of lading are not in the strict sense of the term negotiable under the law merchant; but for a great number of years their possession by the shipper has been regarded as prima facie evidence of the ownership of the goods shipped, and their delivery upon advances made is a symbolical delivery of such property.

APPEAL from Limestone.   Tried below before Hon. RUFUS HARDY.

*Gibson, Evans,* and *H. L. Stone,* for appellants.—1. The bill of lading delivered by defendant Williamson to defendant bank was not a negotiable instrument, and the custom of banks in this country would not make it so. Weyand v. Railway, 75 Iowa, 573.

2. The receiver having contracted to deliver the cotton to the order of Bessling & Co. in Galveston, and having delivered same to the First National Bank of Corsicana on presentation of the bills of lading without endorsement by Bessling & Co., became liable to whoever was the real owner of said bills of lading and entitled to said cotton; and as Prendergast, Smith & Co. were the real owners of said bills of lading, and entitled to said cotton until the purchase price was paid, the receiver became liable to them for its value.

3. The First National Bank of Corsicana having taken possession of and converted to its own use the cotton for which the bills of lading were issued at Richland station, and which bills of lading defendant Williamson, who held them for Prendergast, Smith & Co., wrongfully delivered to defendant bank, became liable to plaintiffs, Prendergast, Smith & Co., for its value.   1 W. & W. C. C., sec. 1217; Templeman v. Gresham, 61 Texas, 50.

4. Williamson was simply the agent of Prendergast, Smith & Co. to have the bills of lading signed by the agent of the railway company and return the same to them.   His disposition of them to the bank, without the consent of Prendergast, Smith & Co., did not confer any right in either the bills of lading or the cotton; nor did the possession of such bills of lading by Williamson enable him to impose on the bank, as he was neither the consignor nor consignee named in same, nor were they endorsed.   Porter on Law of Bills of Lading, sec. 496.

5. Possession of such bills of lading as the ones in question are no evidence of ownership, and it devolved on the bank, on presentation of same, to make inquiry.   Campbell & Clough v. Alford, 57 Texas, 159; Craig & Ogden v. Marx & Kempner, 65 Texas, 649; Weyand v. Railway, 9 Am. St. Rep., 504.

*O. T. Holt,* for appellee Dillingham, Receiver.—Where under the undisputed facts the appellants were not entitled to recover, it was proper for the judge to direct the jury to return a verdict for defendant.   Teal v. Terrell, 58 Texas, 261; Hedgepeth v. Roberts, 18 Texas, 871; Mitchell v. De Witt, 20 Texas, 294; Roddy v. Kingbury, 5 Texas, 152; Reid v. Reid, 11 Texas, 593; Bond v. Mahler, 17 Texas, 871.

*McKie & Autry,* for appellee First National Bank.—1. The owner of property who has delivered the same to a carrier and received the latter's

·bill of lading therefor may deposit the bill of lading with a banker, with intention that the goods covered shall be security for moneys advanced by the banker, and the latter thereby becomes invested with the property in the goods to protect his advances.    Campbell v. Alford, 57 Texas, 159; Dows v. Bank, 91 U. S., 214; Bank v. Dearborn, 115 Mass., 219; Emery's ·Sons v. Bank, 25 Ohio St., 360; Bank v. Jones, 4 N. Y., 497.

2.  A mere promise or agreement to give a lien or to do certain acts, which would, when done, create a lien, will not avail the party who claims the proposed lien as against a third party, wholly without notice of the negotiations.    Campbell v. Alford, 57 Texas, 161; 1 Jones on Liens, 32.

3.  A lien holder can not subject to his foreclosure process property ·which has gone into the hands of a third person who has paid value, and who had no notice, actual or constructive, of the lien.

Where, by the terms of a contract of sale, anything remains to be done by the parties before it is consummated, the sale is not complete, and no title passes.    Woods v. Halff, 44 Texas, 636; Kelly v. Webb, 29 Texas, 368; Allen v. Melton, 64 Texas, 218; Cleveland v. Williams, 29 Texas, 204.

LIGHTFOOT, CHIEF JUSTICE.—Appellants, Prendergast, Smith & Company, brought this suit in the District Court of Limestone County, ·against A. C. Williamson, W. H. Bessling & Co., the First National Bank of Corsicana, and Charles Dillingham, receiver of the Houston & Texas Central Railway Company, alleging, that they advanced to defend- ·ant A. C. Williamson sums of money aggregating $1715.40 with which to buy cotton, with the agreement that the cotton so purchased should stand ·as a pledge and security to plaintiffs for the money advanced by them, and when sold the proceeds should belong to plaintiffs, and should be paid ·over to them to the extent of all advances made.

That about November 12, 1890, said Williamson had on hand thirty- nine bales of cotton so purchased, which, by agreement between himself ·and plaintiffs, was sold to Bessling & Co. at 8¼ cents per pound; that the purchasers (Bessling & Co.) made out and gave to Williamson to have signed bills of lading for the cotton, naming themselves as consignors and consignees, the cotton to be shipped over the Houston & Texas Cen- tral Railway to Galveston; it was agreed that the invoice of the cotton should be made and bills of lading procured, and upon delivery of the :same, the money should be paid by Bessling & Co. to plaintiffs.    That after getting such invoice and bills of lading, said Williamson failed to ·carry out the agreement to deliver the same to plaintiffs or Bessling & Co., but in order to defraud plaintiffs, delivered them to the First National Bank of Corsicana.    Plaintiffs charge notice on the bank and the receiver of their rights, and that with such notice the receiver de-

livered the cotton to said bank, and they ask judgment for the value of the cotton.

The defendant bank answered, claiming that in the due course of trade defendant Williamson, who was the owner of the cotton, procured from it an advance of $1716.33 upon a draft on Bessling & Co., with the bills of lading for the cotton attached thereto, which it claimed to be a lien on said cotton; and that it had no notice, actual or constructive, of the claimed rights of plaintiffs, and that it subsequently procured the cotton under such bills of lading, and applied the same to said debt.

The receiver answered by general denial.

Williamson and Bessling & Co. failed to answer, and judgment by default was rendered against them. There was judgment in favor of the receiver and the First National Bank of Corsicana against plaintiffs, from which this appeal was taken.

The facts were substantially as follows: Prendergast, Smith & Co. are bankers at Mexia, Texas, and in the year 1890 A. C. Williamson made arrangements with them to furnish him money to buy cotton at Richland Station, upon the following terms: He was to invest all the money furnished him in cotton, which was to be held subject to their order and sold under their direction, and they were to have a lien upon it to secure the advances made under this arrangement, which was verbal. Williamson had bought thirty-nine bales of cotton with money so furnished by appellants, and cotton having declined in price, they insisted upon its being sold. It was contracted to be sold by Williamson, under the direction of appellants, to Bessling & Co., at 8¼ cents per pound, and it was by all three parties agreed that the money should be paid to appellants. The bills of lading were made out by Bessling & Co., at Mexia, to themselves as consignors and consignees, and delivered to Williamson, who was to go to Richland, have the cotton invoiced and shipped to Galveston, and the bills of lading signed up and returned to appellants, and upon the delivery of same to Bessling & Co. they were to pay the money to appellants. Williamson took the bills of lading to Richland, had the cotton invoiced and shipped, Bessling & Co. being named as consignors and consignees of the thirty-eight bales and as consignees of the one bale, and the bills of lading were signed up by the agent of the receiver at that place November 10, 1890, shipping thirty-eight bales to Galveston and one bale to Mexia; but instead of sending the bills of lading to appellants, as he had agreed to do, Williamson took them to Corsicana, and made a negotiation with the First National Bank of Corsicana whereby it advanced him $1716.33 upon the cotton, and he executed to the said bank his draft on Bessling & Co. for that amount, with bills of lading attached for the cotton. This draft, with bills of lading attached, was promptly sent by said bank to Prendergast, Smith & Co., at Mexia, for presentation to Bessling & Co. The draft was presented by appellants, who at the same time noti-

fied Bessling & Co. that there was something wrong about it; and appellants on the same day telegraphed the First National Bank of Corsicana of their claim to the cotton. Bessling & Co. did not pay the draft, and did not set up any further claim to the cotton.

This suit was brought November 25, 1890. After the institution of this suit the cotton was delivered by the receiver to the First National Bank of Corsicana upon the bills of lading, and sold for its account for less than the amount advanced by it to Williamson.

The leading questions presented by appellants in their brief are under the fourth and fifth assignments of error, as follows:

"4. The court erred in that part of the charge to the jury in which they were told, that under the law applicable to the facts in evidence, appellants, plaintiffs below, had no right to recover against the defendant the receiver of the Houston & Texas Central Railway Company, and instructing the jury to find for said defendant.

"5. The court erred in that part of the charge to the jury in which they were told, that under the law applicable to the facts in evidence, the appellants, plaintiffs below, had no right to recover of the defendant the First National Bank of Corsicana, and in instructing the jury to find a verdict for said defendant."

If these two charges were correct, it will be useless to consider the other assignments presented, as they will settle the controversy.

Where under the most favorable view that can be taken of the testimony, the plaintiff is not entitled to recover, it is not improper for the court to charge the jury to find a verdict for the defendant. Eason v. Eason, 61 Texas, 225; Teal v. Terrell, 58 Texas, 257.

The first questions for us to examine are: Did the appellants, under their contract with Williamson, acquire a valid lien upon the cotton; and if so, did these appellees have notice of it? It is not claimed by appellants that they acquired ownership of the cotton. Under the agreement, the ownership of the cotton was in Williamson, and there was a verbal understanding that it should be sold whenever appellants should direct, and that they should be paid out of the proceeds the money advanced by them to buy it. When the cotton was agreed to be sold to Bessling & Co. and the proceeds paid to appellants, if this sale had been perfected and the bills of lading delivered according to the contract, there could be no question of their lien.

Under our laws (Sayles' Civil Statutes, section 3190b) it is provided, that " Every chattel mortgage, deed of trust, or other instrument of writing intended to operate as a mortgage of or lien upon personal property, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as to the creditors of the mortgagor or person making the same, and as against sub-

sequent purchasers and mortgagees or lien holders in good faith, unless such instrument or a true copy thereof shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated," etc.

The appellants, claiming a verbal lien, are certainly in no better condition than if they had a written lien. If they had a written lien, unregistered, possession of the property would be absolutely necessary to its validity as against subsequent purchasers and mortgagees or lien holders in good faith. It follows that if they had a verbal lien which might be good as between the parties, yet unless they were in actual possession of the property, such lien would not be valid against a subsequent purchaser or mortgagee or lien holder in good faith. Furniture Co. v. Hotel Co., 81 Texas, 141; Lazarus v. Bank, 72 Texas, 354; Brothers v. Mundell, 60 Texas, 246; Gay v. Hardeman, 31 Texas, 245.

The first named case, it seems to us, states the doctrine with more force than is necessary to maintain our position: "That every chattel mortgage or lien on personal property, or reservation of any title or interest therein, intended as a security for the payment of the purchase money or other debt, is, when the vendee or mortgagor is given or allowed to retain the possession of the property, void as to the *lien creditors* of such vendee or mortgagor, with or without actual notice, unless such mortgage lien or reservation of title or interest in the property for the purpose aforesaid is in writing, duly approved or acknowledged, and filed for record as required by law in such cases." 81 Texas, 141.

The bills of lading were never delivered to Bessling & Co. nor to appellants, so that the former never secured title to the property by a perfected purchase, and the latter never secured a perfected lien, as they had neither actual nor symbolical possession of the property or any instrument of writing whatever showing any valid lien   Bessling & Co. are not claiming the ownership of the cotton under the transaction. Some of the essential elements of a perfected sale were wanting: first, the cotton was to be invoiced and the weights ascertained before the amount of the purchase price could be known; second, it was to be shipped and the bills of lading delivered, which would constitute a delivery of the cotton; third, Bessling & Co. were not to pay the money until the bills of lading were delivered to them. Upon the completion of these stipulations, the seller had the right to demand of the buyer that he should carry out the contract of purchase by paying the purchase price. as he had agreed. If the cotton had been destroyed by fire at any time before the delivery of the bills of lading to the buyer, it can not be doubted that the loss would have fallen upon the seller.

The right of Prendergast, Smith & Co. rested upon the perfection of the sale to Bessling & Co. and the delivery of the bills of lading upon which they were to receive their money. They trusted Williamson to

perfect the sale and to deliver to them the bills of lading for the cotton; but he not only failed to do this, but took the bills of lading to the First National Bank of Corsicana and procured advances upon them to the full value of the cotton, drawing a draft upon Bessling & Co., with the bills of lading attached. It is true that bills of lading are not in the strict sense of the term negotiable under the law merchant; but for a great number of years their possession by the shipper has been regarded as prima facie evidence of ownership of the property shipped, and their delivery upon advances made as a symbolical delivery of such property. Campbell v. Alford, 57 Texas, 159; Dows v. Bank, 91 U. S., 618; Bank v. Dearborn, 115 Mass., 219; Emery v. Irving, 25 Ohio St., 360; Rochester v. Jones, 4 N. Y., 497; Holmes v. Bailey, 92 Pa. St., 57; Holmes v. Bank, 87 Pa. St., 525.

The First National Bank of Corsicana was a bona fide purchaser, and had no actual notice of appellants' claim at the time it advanced the money and took the draft with bills of lading attached, even if the queston of notice should enter into the discussion. Was the fact that the bills of lading were in the name of Bessling & Co. sufficient to put them upon notice of appellants' claim? We think not. It is customary for shippers to consign their produce to purchasers or factors, and draw upon them for the purchase price with bills of lading attached. Such dealings are not out of the usual course, and the bills of lading gave no notice whatever that Prendergast, Smith & Co. claimed any lien upon the property. They were put in that form by Bessling & Co. with the full knowledge and consent of Mr. Blake, who represented Prendergast, Smith & Co., and being entrusted by their consent to Williamson, they took the risk of his handling them honestly and fairly, as they had taken the risk of his handling their money. It is a well established principle of equity, that where one of two innocent parties must suffer, he who trusts most shall suffer most. They had placed it in the power of Williamson to obtain advances upon the cotton in the usual course of trade from innocent parties, and under our registration statutes, possessing neither a registered lien nor having either actual or symbolical possession, nor, in fact, anything whatever upon which to base their claim, beyond a bare verbal promise of Williamson, they have failed to establish their case, either against the First National Bank of Corsicana or the receiver.

Appellants claim, that inasmuch as the shipper, Williamson, took the bills of lading in the name of Bessling & Co., that this was sufficient to put the First National Bank of Corsicana upon inquiry, and even upon notice of their rights in the cotton. But this contention can avail nothing, unless appellants had a valid lien upon the cotton. Let us examine it, however, in the light of the authorities. Did the consignment vest any title, either legal or equitable, in Bessling & Co.? Mr. Porter, in the Law of Bills of Lading, section 480, says: " Before the consignment can

in any event be regarded as vesting title in the consignee, it must be accepted by the latter.  Where he has not accepted it and disclaims any interest in it, the court will hold the title to be vested in the consignor.  *  *  *  So where a conditional shipment is made, e. g., where the property is to pass upon the consignee's acceptance or payment of a draft, the consignee has no title until the condition is performed."

In this case Williamson was the owner and the shipper, and held possession of the bills of lading of the cotton.  He obtained from the First National Bank of Corsicana a loan of money, and hypothecated or pledged the bills of lading representing the cotton, to secure the loan.  Bessling & Co. refused to accept the bills of lading and pay the draft, and they acquired no right whatever in the cotton.  The First National Bank of Corsicana, as holders of the bills of lading, demanded and received the cotton from the receiver, and applied it to the payment of the debt secured, as they had the right to do.  Bessling & Co. are not claiming the cotton.  Williamson is not claiming it as against the First National Bank of Corsicana.  Appellants are not known in the bills of lading, and must rest their claim wholly upon their verbal agreement with Williamson, which certainly does not establish a lien as against a subsequent bona fide lien holder or purchaser.

The court did not err in charging the jury that appellants had no right to recover against the receiver or the First National Bank of Corsicana.  The decision of this question settles the other points made in appellant's brief, and the judgment is affirmed.

*Affirmed.*

Delivered March 7, 1894.