[No. 1931.  Decided February 8, 1896.]

ABRAM HEILBRON et al., Executors, Respondents, v. THE GUARANTEE LOAN & TRUST COMPANY, Appellants.

PLEDGE OF COLLATERAL SECURITY — WHAT CONSTITUTES — DELIVERY.

An offer of insurance policies as collateral security for an indebtedness, without actual delivery thereof, the debtor retaining them among his private papers, with the understanding that the creditor should take possession in case anything happened to him, does not constitute a pledge of the policies.

Appeal from Superior Court, King County.—Hon. T. J. HUMES, Judge.  Affirmed.

Preston & Albertson, for appellant.

R. C. Strudwick, for respondents.

The opinion of the court was delivered by

GORDON, J.—Respondents,— plaintiffs in the court below,— as executors of the last will and testament of George H. Heilbron, deceased, brought this action against the appellant, a banking corporation of the city of Seattle, to recover possession of two certain policies of insurance written by the Equitable Life

Assurance Society in the sum of $5,000 each, insuring the life of the said George H. Heilbron.   At the time of his death the deceased was the active manager of the appellant bank and one of its trustees.

The defendant in its answer admitted having possession of the policies and for an affirmative defense alleged:

"That on or about the 8th day of February, 1895, said George H. Heilbron, since deceased, was indebted to said defendant in a sum exceeding the sum of ten thousand dollars ($10,000), and that of said sum there still remains and now is wholly due and unpaid to defendant a sum exceeding $10,000.   That on or about said 8th day of February, 1895, said George H. Heilbron, in his life time, and while he was indebted to said defendant as aforesaid, delivered to, assigned to and deposited with said defendant said policies of insurance mentioned in said complaint herein, and each of them, as collateral security for the payment of said indebtedness of said George H. Heilbron . . . ."

A jury was waived, and the court having made its findings and conclusions, judgment was entered thereon in favor of respondents, from which judgment appellant has appealed.   The question presented for determination is:   Were the policies in fact pledged to the appellant?   The following finding was made by the trial court and duly excepted to by the appellant:

"That the said George H. Heilbron did not in his life time, deliver the possession of said policies to defendant [appellant] as a pledge or otherwise."

In support of its claim to the possession of said policies the appellant produced as a witness upon the trial below one E. B. Downing, its secretary and an active officer in said corporation.   It appears from his testimony that at a meeting of the directors of the appellant bank held in February, 1895, the question of

Heilbron's indebtedness to the bank was considered by said directors, and additional security for such indebtedness was requested. The witness then proceeded as follows:

"*Answer:* After this meeting I was speaking about, Mr. Heilbron said to me that he had *amongst his private papers* two five thousand dollar policies in the Equitable Life Assurance Company, and in case anything happened to him he wanted me to get those policies and put them in *amongst his other collateral.*

"*Question:* Well, where did this conversation take place — in what part of the bank? A. In the manager's office.

"Q. Well, what did you do when that was said by Mr. Heilbron? A. I said to him that I didn't know exactly where those papers were, and that *in case anything happened* it would be better if I knew exactly where to find them, and he said that he would show me. He says, 'Why, you know where my private papers are.' I said, 'Well, I have seen a pouch in there with your name on them,' and I said I would rather he would show me so I would be positive, and he went in with me and opened the drawer and showed me the pouch and said that they were in there.

"Q. Well, state what he said? A. Well, I have stated that he said, in case anything happened to him that he wanted me to get those policies and put them in with this other collateral."

Upon cross-examination, the witness testified as follows:

" *Question:* Where was the pouch of papers to which Mr. Heilbron in this conversation referred? *Answer:* It was in the drawer in the other vault, in the general vault of the bank.

"Q. Was it in the drawer in which Mr. Heilbron kept his private papers and so forth? A. He kept this pouch, that is all the papers he had in there; there was other papers in there belonging to the bank, and I dont know of any papers he had, private papers,

outside of this pouch.  This pouch was in there and other papers belonging to the bank, abstracts and so forth.

"Q.  Who had access to this pouch of Mr. Heilbron's?  A. Who had access to the pouch?

"Q. This private pouch of Mr. Heilbron's?  A. Why, Mr. Heilbron had access to it, and I presume that I had under his direction.  I considered it so.

"Q. Did you have any right to go into this pouch except as he might direct you to do so?  A. I considered I had authority to go in there *in case of his death* and get those policies.

"Q. That was about how long before Mr. Heilbron died?  A. That was about two months I think, as near as I can recollect.

"Q. Now, did you see that pouch from the time of this conversation until the time of Mr. Heilbron's death?  A. Oh, yes.

"Q.  What occasion did you have to see it?  A. When I would go into that drawer to get out a pouch that contained warrants and some other papers that I might be looking for — looking in the drawers; there were three drawers there, all about the same size.

"Q. You would see it on those occasions?  A. Yes, sir.

"Q. Did you ever go into it?  A. *Never*.

"Q. Mr. Heilbron had access to it at all times.  A. Yes, sir.

"Q.  Now, you had other collateral of Mr. Heilbron's for the same debts, did you not?  A. Yes, we had general collateral.

"Q. Where was that?  A. That was in the file, in the collateral file.

"Q. That was in a different place?  A. That was in a different place, yes, sir.

"Q. Now, did you have memorandum of this collateral that you had in the collateral case on the books of the bank?  A. We had it on the books of the bank —we had on the memorandum that was made at the time we went over the bills receivable.

"Q. Were those policies ever entered on that memorandum?    A. I think not.

"Q. Now, when Mr. Heilbron died, acting on what you have stated that he told you, you went, I believe you said, and got these policies out of that pouch and put them with the other collateral?    A. Yes, sir.

"Q. Where did you find them?    A. I found them in the pouch. *His private papers.*

"Q. Did you find them loose or in an envelope?    A. They were in an envelope."

Further on in the course of the cross-examination the following question was propounded:

· *"Question:* There was nothing done by you or by any one representing the bank, so far as you know, concerning these policies between the time of this conversation with Mr. Heilbron, which you have detailed, and the time of Mr. Heilbron's death?    *Answer:* They remained in the pouch.

"Q. There was nothing done, I say, by any one concerning those policies as far as you know?    A. No.

"Q. When you found these policies in this envelope which has been marked Exhibit A, what did you do with them?    A. I put them in with his other collateral."

We think that the evidence was sufficient to warrant the lower court in finding that the appellant was not entitled to the possession of the policies in dispute. We think that it clearly shows that the policies were not pledged by the deceased. His conduct and conversation were not sufficient for that purpose. There was neither possession nor right of possession in the appellant during the lifetime of the deceased, and as possession was lacking no pledge resulted. It seems very plain that it was not intended by the testator that the bank should be entitled to the possession of the policies during his lifetime. It is equally clear that its secretary, from whose testimony we have quoted

at length, did not consider that his bank was entitled to the policies at any time prior to Mr. Heilbron's death. It was only "in case anything happened to him (Heilbron) that he wanted (witness) to get the policies and put them in amongst his other collateral" of the bank, clearly showing that it was the intention of both parties that during the lifetime of the testator they should remain, as they theretofore had been, "amongst the private papers" of the testator. It is also significant that, although the books of the bank contained full memoranda of the other collateral which it held as security for the debt owing to it by Heilbron, no reference was made in said books or records touching or concerning these policies. The bank, therefore, never, during the lifetime of George H. Heilbron, had possession of the policies in dispute. His death revoked the authority upon which appellant relied when thereafter it went by its secretary, Mr. Downing, to his private papers and took said policies therefrom.

"To constitute a pledge, the pledgee must take possession; and to preserve it he must retain possession. An actual delivery of property capable of personal possession is essential. The delivery must be such as would be requisite to transfer the property in the same chattels in case of a sale of them." Jones, Pledges, § 23.

"Possession is of the essence of a pledge; . . ." Casey v. Cavaroc, 96 U. S. 467; Davenport v. City Bank of Buffalo, 9 Paige, 12; Christian v. Atlantic & N. C. R. R. Co., 133 U. S. 241 (10 Sup. Ct. 260).

Of course a symbolical delivery is sufficient where the property is incapable of manual delivery and that is the extent to which the cases of Jewett v. Warren, 12 Mass. 309 (7 Am. Dec. 74); Whitney v. Tibbitts, 17 Wis. 369, and Nevan v. Roup, 8 Iowa, 207, go. In the first of these cases the property in question was a lot

of saw logs in a boom, and a constructive delivery was upheld. In *Whitney v. Tibbitts, supra,* the property in question was a quantity of flour stored in a warehouse, and delivery was made by the pledgor of the warehouse receipt and this was held sufficient. In *Nevan v. Roup* the question arose as to a quantity of oats in bins, and as in the preceding cases the court held that while delivery and possession are essential to a pledge, the delivery may be symbolical and the possession according to the nature of the thing.

The cases cited by the appellant bearing upon the question of what is essential to the delivery of a deed are not analogous to the present case, and require no special notice. An examination of the record satisfies us that the court below rightly found " That the claim of the defendant of the right to retain the possession of said policies as a pledge, is invalid, by reason of the non-delivery of said policies to the defendant by the said George H. Heilbron in his lifetime," and the judgment appealed from is affirmed.

HOYT, C. J., and ANDERS, DUNBAR and SCOTT, JJ., concur.