### NATIONAL BANK OF CLEBURNE V. CITIZENS' NATIONAL BANK OF CLEBURNE.

Decided February 3, 1906.

**1.—Trial of the Right of Property—Pledgee.**

A mere lienholder is not entitled to the remedy of the trial of the rights of property, but such remedy is given to a pledgee of property, provided the officer in making the levy takes possession of the property to the exclusion of the pledgee.

**2.—Same—Compress Receipts—Custom and Usage.**

The appellee advanced money to a cotton buyer to buy cotton, with the agreement that appellee should hold the cotton as security for the money so advanced. The cotton was shipped from Godley to Cleburne and delivered to a compress there. The bills of lading were delivered by the buyer to appellee. The compress gave receipts to the railroad for the cotton. The railroad exchanged these receipts with the appellee for its bills of lading. It was the usage and custom of the compress to consider the holder of its receipts as the owner of the cotton and entitled to demand possession of same. Held, the appellee was entitled to maintain this action, and to hold the cotton against the levy of an execution by appellant.

**3.—Bills of Lading and Warehouse Receipts—Symbols of Possession.**

Bills of lading and warehouse receipts are not considered negotiable in the same sense as bills, notes, etc., but are regarded as representatives of the property covered by them, and when delivered with or without endorsement, in deference to the agreement of the parties, are a constructive delivery of the property.

Appeal from the District Court of Johnson County. Tried below before Hon. Nelson Phillips.

*Davis & Davis* and *Odell & Phillips,* for appellant.—The court erred under the facts in this case in not holding that the claimant had no actual possession of the cotton levied upon and not such possession as would authorize it to claim said cotton under affidavit and bond, and to try the right to same, under the statute for the trial of right of property to said cotton. Sayles' Rev. Stats., arts. 5286-8; Id., arts. 3327-8; Adoue v. Seeligson & Co., 54 Texas, 595; Osborn v. Koenigheim, 57 Texas, 92; Gill v. Frank, 53 Am. Rep., 378; Hallgarten v. Oldham, 46 Am. Rep., 433; Farmers & Mechants Bank v. Slayden, 27 S. W. Rep., 425.

*S. C. Padelford,* for appellee.—Appellee plead and proved that there existed a custom that where cotton was stored with the compress company and such company issued warehouse receipts for the cotton, that this receipt represented the title and possession of the cotton; and that the holder of this receipt was entitled to the possession and title of said cotton, and that the compress company held such cotton for the holder of such warehouse receipts and would deliver such cotton represented by such receipts to whomsoever would present such receipts. This is also the general custom in the State of Texas and other Southern States where cotton is raised, shipped, compressed, etc., and is taken judicial notice of by the courts. Adoue v. Seeligson & Co., 54 Texas, 593-609; Gibson v. Stevens, 8 Howard U. S., 384; Whitney v. Tibbits, 17 Wis., 369; Elliott on Evidence, vol. 1, sec. 64, pp. 71-4; Gregory v. Wendell, 39 Mich., 337; Sacaris v. Railway Co., 51 Am. Rep., 737; Merchants Bank v. Hibbard, 48 Mich., 123, 42 Am. Rep., 465; Osborn v. Koenigheim, 57 Texas, 92-5; Campbell & Clough v. Alford, 57 Texas, 159; Missouri Pac. Ry. Co. v. Heidenheim, 82 Texas, 195.

RAINEY, CHIEF JUSTICE.—This is an action for the trial of the right of property. The property, 45 bales of cotton, was levied on as the property of J. S. Witherspoon, at the instance of the National Bank

of Cleburne. The appellee, the Citizens National Bank of Cleburne, filed oath and claim bond for the property for which judgment was rendered for appellee, and the National Bank of Cleburne appeals.

During the fall and winter of 1903-4 W. S. Dement, a cotton buyer at Godley, bought cotton, for the payment of which he would draw drafts on appellee, which advanced the purchase money. This cotton to the extent of 70 bales was shipped to Cleburne and the bills of lading, made out part in Dement's name and part in the name of appellee, would either be attached to the drafts, or delivered to the appellee to secure said money so advanced. When the cotton reached Cleburne the railroad company turned it over to the Cleburne Compress Company, for which it issued its receipts and delivered same to the railroad company. The railroad then exchanged these receipts for the bills of lading held by appellee. The appellee thereby came into possession of the compress receipts for all the cotton so bought and shipped by Dement and for which appellee had paid the purchase price.

The receipts issued by the compress company, one in the name of appellee for 18 bales, and the balance in the name of Dement, were as follows:

"Cleburne Compress Co.
    Cleburne, Texas, 12-22-'03.
        No. 337.
    "Received from the Gulf, C. & S. F. Ry. Co. for the account of the Citizens' National Bank at owners risk. This receipt must be returned on delivery of this cotton, and is non-negotiable. Not responsible for loss or damage by fire, 18 bales of cotton from Godley.
                                        "W. W. Murphy, Sup't."

Murphy was the manager of the compress company. This receipt is a counterpart of those issued to Dement, except his name was inserted instead of appellee's.

Some time after this, Pittman, the president of the Citizens' National Bank of Cleburne, at the request of Dement, sold this cotton to one J. S. Witherspoon for which he executed his note to appellee with Pittman as security and Dement's account credited therewith. The understanding at the time between Pittman and Witherspoon was that the cotton should remain pledged for the purchase money. The day before the levy of the execution on the cotton the note was surrendered and Witherspoon was debited on the books of appellee with the purchase price of the cotton. The compress receipts for the cotton were held and possessed by appellee as security for the money advanced thereon, and appellee held said receipts from the time it exchanged the bills of lading therefor and still possessed said receipts at the date of trial.

It was the custom and usage for the compress to deliver its receipts to the railroad for cotton so received, and the railroads would deliver the receipts to the holders of the bills of lading and take up the bills of lading, and the holders of said receipts would be the owners and possessors of said cotton represented thereby, and upon presentation of said receipts to the compress company the cotton would be delivered to the ones holding same, the compress recognizing the holders of said

receipts as the owners of the cotton. Witherspoon paid 14 cents per pound for the cotton which declined to 9 cents at the time of levy, and to 6 or 7 cents at the date of trial.

At the time of levy Witherspoon had no property in sight subject to execution, unless the property levied on should be considered as his.

The right of the appellee to test its claim to the cotton by filing claimant's oath and bond is questioned by the appellant.

A mere lienholder is not entitled to the remedy of the trial of the rights of property, but such remedy is given to a pledgee of property, provided the officer in making the levy takes possession of the property to the exclusion of the pledgee. Where, however, the officer makes the levy by giving the possessor of the property notice as required by statute, and does not take the property into his possession, then such remedy can not be availed of by the pledgee. (Osborn v. Koenigheim, 57 Texas, 92.) The officer in this case in making the levy, took possession of the cotton to the exclusion of the appellee, and if the cotton was held by appellee as a pledge at that time then appellee was entitled to file its oath and bond and test its right under such proceeding.

Was the property pledged to appellee, and was appellee in constructive possession thereof when the levy was made? Appellee advanced the money to Dement to pay for the cotton, it being agreed that appellee should hold the cotton as security for the money advanced by it. When the cotton was shipped to Cleburne the railroad executed its bills of lading therefor and these bills of lading were delivered to appellee in pursuance of said agreement. The appellee, by this dealing, had the right to hold the cotton as against all comers, until its debt was paid. (Campbell v. Alford, 57 Texas, 159.)

The railroad delivered the cotton to the Cleburne Compress Company, which executed and delivered to the railroad its receipts for same. These receipts were exchanged to appellee for the bills of lading held by it. The status of the property was not changed by this exchange, except the compress became the bailee of the cotton instead of the railroad. The situation as between Dement and appellee remained the same. But appellant claims, as the receipts issued by the compress company were *non-negotiable* on their face, and were not endorsed by Dement, that they were not such symbols of possession as gave appellee a right to the property.

Bills of lading and warehouse receipts under the law are not considered negotiable in the sense that bills, notes, etc., are considered, but are regarded as representatives of the property covered by them, and when delivered, with or without endorsement, in deference to the agreement of parties, are a sufficient constructive delivery. (Campbell v. Alford, supra; Adoue v. Seeligson, 57 Texas, 595; Osborn v. Koenigheim, supra.)

The compress company recognizes the right of appellee to the property for its custom and usage was to consider the holders of the receipts as the owners of the property and entitled to demand same when desired. Under this view the appellee was entitled to this action, unless by the deal with Witherspoon, as shown by the facts, appellee was divested of the pledge. We are unable to see that the relation of appellee to the property was changed in any manner by such deal.

Dement parted with his interest in the cotton and Witherspoon simply took his position—the understanding being that the cotton should remain pledged for the purchase money. The receipts remaining with appellee and Witherspoon agreeing and consenting thereto, did not altar appellee's relations to the property in any sense.

It is urged that Witherspoon executed a solvent note for the cotton payable to the appellee and this deal thereby settled the appellee's claim as to the cotton. We consider it immaterial whether the note executed by Witherspoon was good or not, if the appellee retained possession of the receipts with the understanding at the time that the cotton was to remain as security for the purchase money.

Appellee had the right to enter into an agreement with Witherspoon as to the security it was willing to accept.

The evidence was sufficient to sustain appellee's position as to its right of recovery and the judgment is affirmed.

*Affirmed.*

Writ of error refused.