American Thresherman, Appellant, vs. Citizens Bank of Anderson, Indiana, Intervener, Respondent.

*April 12—October 7, 1913.*

*Fraudulent conveyances: Transfer of bill of lading: Passing of title: Attachment: Garnishment: Foreign corporations: Sales.*

1. Pursuant to a standing agreement and a uniform course of business between a manufacturing company and a bank, both located in Indiana, the bank discounted a draft, with bill of lading attached, drawn by the company against a shipment of goods sold to a resident of this state, paying the company

ninety per cent. òf the face of the draft and holding ten per
cent. to cover interest and any expenses that might be incurred
in collection, but with the understanding that the residue, if
any, should be credited on the company's indebtedness to the
bank. Before delivery to the purchaser the goods were at-
tached in this state by a creditor of the company, and a bank
in this state, to which the draft and bill of lading were sent
for collection, was garnished. The Indiana bank intervened,
claiming title to the goods. *Held*, that the intervener had
become the owner of the goods prior to the attachment, and
was not a mere agent of the manufacturing company to collect
the purchase price thereof.

2. Evidence showing the above facts, among others, is *held* to sus-
tain a finding by the trial court that in said transaction there
was no intent to hinder, delay, or defraud creditors.

3. No part of the ten per cent. reserved for interest and expenses
was .subject to garnishment, because by the agreement any
surplus was to be credited on the principal defendant's indebt-
edness to the bank.

4. The facts that the contract of sale was between a foreign cor-
poration and a resident of this state, and that it contemplated
a delivery of the goods within this state, do not affect the
rights of the parties.

APPEALS from judgments of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed*.

This action was brought on the 11th day of May, 1911, in
the circuit court for Dane county by the plaintiff to recover
from the De Tamble Motors Company, defendant, $436.80
alleged to be due on contract, and at the same time plaintiff
attached as the property of the defendant three automobiles
and accessories then in possession of the Chicago & North-
western Railway Company and also summoned the Bank of
Wisconsin, of Madison, Wisconsin, as garnishee, said bank
having in its possession the bill of lading issued by the Big
Four Railway Company covering the attached property and
a draft made by the defendant, De Tamble Motors Company,
on the Hokanson Automobile Company of Madison, Wiscon-
sin, and payable to the *Citizens Bank of Anderson, Indiana*.

The defendant defaulted and judgment was entered
against it for $464.83 damages and $49.54 costs. The gar-

nishee, Bank of Wisconsin, did not answer. On May 18, 1911, the *Citizens Bank of Anderson, Indiana,* respondent, intervened and put in an answer claiming to be the owner of the attached property and alleging that said property was delivered to a common carrier on the 6th day of May, 1911, and said carrier at said time issued to the defendant, De Tamble Motors Company, a bill of lading wherein and whereby said property was consigned and billed to the order of the defendant at Madison, Wisconsin, with directions to notify the Hokanson Automobile Company of Madison, Wisconsin; that at said date said common carrier issued to defendant a bill of lading of said automobiles and accessories and said defendant drew its draft for the purchase price of said property for the sum of $2,661 on said Hokanson Automobile Company; that on the 8th day of May, 1911, defendant assigned and delivered said bill of lading to said intervener, respondent, by indorsement thereon in writing; that said draft was drawn to the order of the intervener and said bill of lading was attached to the draft, and the draft together with the bill of lading was sold, assigned, and delivered to said intervener, respondent, for a good and valuable consideration, namely, $2,395, which sum was paid to defendant, De Tamble Motors Company, by said intervener, and thereby said intervener became the owner of the bill of lading, draft, and property described. The intervener prayed that the attachment be dissolved and it declared the owner of the property, and for costs.

The plaintiff answered the pleading of the intervener and denied generally the allegations thereof, except that the intervener was a banking corporation organized under the banking laws of the state of Indiana, and that its principal place of business was the city of Anderson, Indiana; and alleged that the proceedings between the plaintiff and the intervener were fraudulent and intended to hinder, delay, and

defraud the creditors of the defendant, De Tamble Motors Company.

The court made the following findings:

"That the defendant, the De Tamble Motors Company, was indebted to the plaintiff on December 21, 1911, in the sum of $462.53 for advertising space used by the said defendant company in the American Thresherman, published by the plaintiff.

"That on May 6, 1911, the defendant, the De Tamble Motors Company, shipped to Madison, Wisconsin, three automobiles, with extras, manufactured by said defendant company, which had been sold to the Hokanson Automobile Company, of Madison, Wisconsin; that said automobiles and extras were consigned to the De Tamble Motors Company at Madison, Wisconsin; that said defendant company took from the common carrier to whom said automobiles and extras were delivered for shipment an order bill of lading, which did not have plainly written or printed upon its face the words 'Non-negotiable.'

"That said bill of lading was indorsed in blank by said defendant company and delivered to the intervening defendant, the *Citizens Bank of Anderson, Indiana,* together with a draft on said Hokanson Automobile Company payable to said *Citizens Bank* for the amount for which said automobiles and extras had been sold; that said defendant company was immediately given credit by said *Citizens Bank* for the amount of said draft, less ten per cent. which was reserved by the bank to pay interest on the money so advanced and any expense that might be incurred in collecting said draft, under an existing agreement between the bank and said defendant company that the balance of said ten per cent. above said charges for interest and expenses should be credited to the said defendant company when said draft was paid; that said De Tamble Motors Company checked out the amount so credited for said draft.

"That this transaction with reference to said draft and bill of lading was in accordance with a uniform course of business existing prior to May 6, 1911, whereby the bank gave said defendant company credit for drafts and bills of

lading upon similar shipments made by it; that said arrangement was not entered into collusively and fraudulently, nor for the purpose of hindering, delaying, or defrauding the creditors of the defendant company.

"That on the 15th of May, 1911, when the said automobiles and extras were attached by the plaintiff, the said automobiles and extras were the property of the *Citizens Bank of Anderson, Indiana.*"

The court concluded that the plaintiff is entitled to judgment against the defendant, the De Tamble Motors Company, for the sum of $462.53, together with interest on the same at six per cent. from December 21, 1911; that the plaintiff gained no right or title or interest in the said automobiles and extras by the attachment attempted to be made on May 15, 1911; that the judgment entered in this action vacate the attachment of said automobiles and extras.

Judgment was entered in favor of the intervener adjudging that it was the owner of the automobiles and accessories and that the appellant acquired no right, title, or interest therein by the attachment, and vacating and setting aside the attachment with costs; and in the garnishee action judgment was rendered adjudging that the garnishee was not liable and dismissing the garnishee proceeding. From these judgments the appeals were taken.

*C. F. Lamb,* for the appellant, argued, *inter alia,* that the intervener was simply agent for the De Tamble Company in collecting the purchase price of the automobiles from the Hokanson Company, and was to be compensated by interest on the amount of money it advanced and reimbursed for expenses incurred in collecting the draft; hence the overplus was the property of the De Tamble Company. 4 Am. & Eng. Ency. of Law (2d ed.) 548; *Clary v. Tyson,* 97 Mo. App. 586, 71 S. W. 710; *Norfolk & W. R. Co. v. Sims,* 191 U. S. 441, 24 Sup. Ct. 151; *Portland F. M. Co. v. British & F. M. Ins. Co.* 130 Fed. 860. Under such circumstances the draft was subject to garnishee process. *Storm v. Cotz-*

*hausen,* 38 Wis. 139; *Mayo v. Hansen,* 94 Wis. 610, 613, 69 N. W. 344; *Everdell v. S. & F. du L. R. Co.* 41 Wis. 395. The agreement between defendant and intervener was calculated to hinder and delay creditors and was therefore void. *Butts v. Peacock,* 23 Wis. 359; *Rice v. Morner,* 64 Wis. 599, 25 N. W. 668; *Blakeslee v. Rossman,* 43 Wis. 116; *Liver v. Thielke,* 115 Wis. 389, 91 N. W. 975; *David v. Birchard,* 53 Wis. 492, 10 N. W. 557; *Zimmerman v. Bannon,* 101 Wis. 407, 77 N. W. 735; *Tickner v. Wiswall,* 9 Ala. 305; *Holt v. Creamer,* 34 N. J. Eq. 181; *Sommerville v. Horton,* 4 Yerg. 541; *Simpson v. Mitchell,* 8 Yerg. 417.

For the respondent there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *S. T. Swansen.*

The following opinion was filed April 29, 1913:

KERWIN, J. The only questions necessary to be considered upon this appeal are (1) whether the findings are supported by the evidence; and (2) whether the findings support the judgment.

We have examined the record with care and are convinced that it cannot be said that the clear preponderance of the evidence is against the findings. The evidence is ample to sustain the finding that the intervener, *Citizens Bank of Anderson,* was the owner of the property at the time of the attachment. It appears clearly from the evidence that there was an agreement between the defendant and the intervener to the effect that the intervener would discount drafts drawn for the purchase price of cars when sold with the bill of lading attached, the drafts to be payable to the order of the intervener, it to pay ninety per cent. of the drafts to defendant, and hold ten per cent. to cover interest at six per cent. on the amount of money paid, and use the balance of the ten per cent. to cover any expense that the intervener might be put to in fully realizing upon the drafts, and that if any balance remained of the ten per cent. reserved it should be credited

on indebtedness of defendant to intervener. This business system, the evidence shows, was followed in the instant case,—the draft was drawn for the purchase price of the cars and, with the bill of lading attached, delivered to the intervener bank, ninety per cent. thereof paid to defendant and ten per cent. held in accordance with the agreement above mentioned. The evidence shows that it was the custom of the intervener in such dealings to deduct ten per cent. of the face of drafts to cover interest, collection charges, and any expense incurred in handling such transactions; that the present transaction was carried out pursuant to such agreement. The cars were delivered to the railway company for shipment, a bill of lading issued to defendant as consignor, cars consigned to defendant as consignee, notify Hokanson Automobile Company, the draft for purchase price drawn on Hokanson Automobile Company, payable to the order of intervener, and the draft and bill of lading discounted by the intervener bank, and delivered to it. The intervener indorsed the draft to the Bank of Wisconsin for collection. The amount of the draft less ten per cent. was credited by intervener to defendant and the ten per cent. held to cover interest, costs, and charges which might be incurred, and the balance, if any, to be credited to defendant. The evidence clearly shows that the title to the property described in the bill of lading passed to the intervener. We think there is sufficient evidence to support a finding that there was no intent to defraud creditors. All the facts set forth in the findings respecting the manner in which the business was done under the agreement between the defendant and the intervener and the uniform course of business of the intervener prior to May, 1911, are well supported by the evidence.

Point is made by appellant that the place of performance of the contract was Madison, Wisconsin. While it is true that the arrangement contemplated the delivery of the cars

at Madison, Wisconsin, the contract between the defendant and the intervener by which the title to the property passed to the intervener was made in Indiana. But even if the contract were made in Wisconsin we cannot see that it would change the result of this appeal.

It is also argued by appellant that the intervener was simply the agent of defendant to collect the purchase price of the automobiles from the Hokanson Automobile Company. If this were so there would be force in some of counsel's argument. But since we agree with the court below that the title to the property passed to the intervener in Indiana, it becomes unnecessary to consider much of counsel's argument.

Counsel for appellant further argues that there remained in the possession of the intervener some portion of the ten per cent. reserved after paying interest, costs, and charges, and that amount is subject to the claim of plaintiff. But under the agreement and transfer of the property nothing remained which belonged to defendant. If there was any surplus it was by the terms of the agreement to be credited upon the indebtedness of defendant to the intervener, which at the time of the transfer was about $7,000.

Under the findings supported by the evidence we are of opinion that the title to the property in question passed to the intervener, and that the appellant has shown no right to the property or money in controversy. 36 Cyc. 218; *First Nat. Bank v. Mt. Pleasant M. Co.* 103 Iowa, 518, 72 N. W. 689; *Shaffer v. Rhynders,* 116 Iowa, 472, 89 N. W. 1099; *Temple Nat. Bank v. Louisville C. O. Co.* (Ky.) 82 S. W. 253; *Paxson Bros. v. Warfield,* 6 Ga. App. 315, 65 S. E. 34; *Am. Nat. Bank v. Henderson,* 123 Ala. 612, 26 South. 498; *Leinkauf B. Co. v. Grell,* 62 App. Div. 275, 70 N. Y. Supp. 1083.

It follows that the judgments appealed from are right and must be affirmed.

*By the Court.*—Judgments affirmed.

The following opinion was filed May 2, 1913:

MARSHALL, J. (*dissenting*).   My brethren do not seem to have given proper effect to the rule that, where a conclusion of fact, made by a trial court, results from mere inference from circumstances, admitted or clearly established, it is not entitled to any very great, if any superior, weight over the inference which any member of the appellate court may draw from the same circumstances as detailed in the record. Why is a trial judge's inference as to the real purpose of the Motors Company and its bank in resorting to the peculiar method which it did for getting the former's product into this state and the equivalent in money out of it, defying plaintiff to realize on its claim, except at the company's pleasure, superior to the inference which any one of us may draw here?   The trier did not have any advantages which we do not possess.   The undisputed circumstances raised a question which appeals to ordinary common sense in the light of experience in life, as to what the real intention was.   Certainly, the training here, need not defer on a question of that kind to the trial judge.

There is no rule of more consequence in promoting speedy, economical, judicial, and just settlement of controversies, than the one that a trial judge's findings as to matters of fact are not disturbable on appeal unless contrary to the clear preponderance of the evidence and,—in the judgment of the writer, it is the doctrine of the court that all reasonable doubts should be resolved in favor of such findings in order to fully vindicate that they are due to prevail unless clearly wrong.   But, like all good rules it may be carried too far, resulting in injustice prevailing, unless its limitations are carefully kept in mind.   It seems to me that has not been done in this case.

To give proper point to what I have said, it is necessary to portray the situation in my own way.   It does not appear fairly from the findings.   Many vital matters,

though requested to be included therein by counsel for appellant, were omitted. That, probably, is attributable to counsel for the prevailing party having been permitted to do the trial judge's work of drafting his findings. Not until that bad practice shall have been eliminated and trial judges save themselves from the burden of work which the Code does not require of them and put the saved labor into framing, in plain concise language, their conclusions as to the facts and the law, as the Code contemplates shall be done, will the closing of controversies tried by the court have the appropriate judicial air about them.

Here are the circumstances appearing by the record, but not found in any satisfactory way, in the findings:

February 11, 1911, the Motors Company, a foreign corporation located in Indiana, being in financial difficulty, proceedings were had between it and its creditors, practically all of the latter joining except plaintiff, resulting in a reorganization plan enabling the company to go on with its business, undisturbed by any of the nonparticipating creditors. Upon failing to secure an independent arrangement as to its claim, plaintiff notified the Motors Company that April 1, 1911, unless such claim should be sooner settled, it would improve the first opportunity afforded of collecting it by attaching the Motors Company's goods, shipped into this state. Thereafter the Motors Company continued its general business, one Waters, holding the office of president, with full knowledge of all the facts aforesaid. He arranged with the *Citizens Bank of Anderson, Indiana,* to take the Motors Company's drafts with bills of lading attached, representing automobiles in course of delivery to customers, and advance ninety per cent. thereof, retaining the residue subject to its charges and the result of forwarding the drafts for collection, the residue of this ten per cent., at the option of the bank, to be applied on its indebtedness. Pursuant to this arrangement the Motors Company made a shipment of its goods to itself as consignee at Madison, Wisconsin, for delivery there

to the Hokanson Automobile Company upon its paying the draft with bill of lading representing the purchase price. The bill of lading, without any notation thereon as to negotiability, attached to a draft on the Hokanson Company, at Madison, Wisconsin, was discounted at said *Citizens Bank,* as such bank claims, or was deposited with it for collection. The draft was for $2,661. The bank advanced thereon $2,395, and placed the balance in a certificate of deposit in its own favor to await return of the proceeds of the collection. The *Citizens Bank* forwarded the same with bill of lading attached, the draft properly indorsed by it, to the garnishee bank for collection at Madison. Upon arrival of the goods and the draft at the destination and before presentment to the drawee, the property was attached, at the suit of plaintiff, and the Bank of Wisconsin, the collecting agent at Madison, was garnisheed. Thereafter, by assent of all interested, the Hokanson Company paid the draft and the garnishee remitted all but $600, which it deposited with the Central Wisconsin Trust Company in lieu of the property attached, to await the result of the litigation. The garnishee deducted from the residue of the collection $10 for attorney's fees and $5 for exchange, being all of the expenses of the *Citizens Bank* in respect to the matter, leaving $2,046, the amount remitted. Upon receipt thereof the *Citizens Bank* placed the same in a certificate of deposit and held it with the other certificate subject to final termination of the litigation.

Now, to my mind, the facts stated present a very plain case of transfer of property with mutual intent between the parties to the transaction to delay a creditor in the collection of its claim. I cannot see any other explanation of the peculiar departure from the ordinary business methods of collecting for goods sold, by means of a draft drawn by the seller on the buyer and sent with bill of lading through the seller's bank for presentation to the buyer. The subterfuge of going through the form of a sale of the draft to the local bank and it advancing part of the purchase price and setting aside the

balance in a certificate of deposit to await results, ought not to deceive any one. If there were no ulterior motive, why did the *Citizens Bank* set aside ten per cent. of the draft to insure it against contingencies? What difficulties could have been anticipated except just such as occurred in this case? The explanation that this ten per cent. was in part to cover six per cent. collection charges, and made in such a way as to leave the impression that six per cent., flat, was meant, made a bad-looking situation look worse. Counsel appreciated that on the argument and was moved to confess that what was meant was at the rate of six per cent. for the time intervening between the advance made on the draft and realization thereon which, manifestly, could only be a small amount as the time required to make the collection, in the ordinary course of things, would be but a few days. The explanation that the draft was handled the same as others, does not help matters. The fact, if it be a fact, that the Motors Company was accustomed to do its business that way so as to carry on its large business and pay the few creditors who did not choose to participate in the plan for avoiding a receivership, does not even tend to show that the ulterior purpose did not exist, fatal to respondent's case. Both parties to the transaction of so handling the Motors Company's property as to facilitate the sale of it in this state and avoid payment of appellant's claim, appreciated that some scheme to that end was essential to circumvent appellant's vigilance.

I think the court should draw the natural inference which the circumstances in this case so forcibly suggest,—do it quite as freely as if the trial court had not acted in the matter. If that were done I cannot doubt but that the result would be a reversal of the judgment.

BARNES, J., also dissents.

A motion for a rehearing was denied, with $25 costs, on October 7, 1913.