HUBBELL, SLACK & CO. v. FARMERS'
UNION COTTON CO. et al. *
(No. 233.)

(Court of Civil Appeals of Texas. Beaumont.
June 14, 1917. Rehearing Denied
June 27, 1917.)

1. GARNISHMENT ⬦228—RIGHT OF PLAINTIFF IN GARNISHMENT — SUCCESSION TO RIGHTS OF ORIGINAL DEFENDANT.

Garnishment cannot confer on plaintiff in garnishment any higher right than that of defendant in the original suit.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 433, 434.]

2. CARRIERS ⬦58—BILL OF LADING—TRANSFER—PAYMENT OF DRAFT ATTACHED.

Where a firm had bales of cotton in its possession evidenced by shipper's order bills of lading issued by different railroads to it, and it indorsed the bills, and, with drafts on the purchasers of the cotton from it attached, delivered them to a bank, which gave credit to the firm's account on its book for the aggregate of the drafts, the bank became vested with title to the cotton either as owner or pledgee.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190.]

3. PLEDGES ⬦26 — REDELIVERY OF POSSESSION—STATUTE.

While the pledgee ordinarily loses his lien by redelivery to the pledgor, the principle does not apply to delivery to the pledgor for a special purpose.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 64–66.]

Appeal from District Court, Harris County; W. J. Howard, Special Judge.

Suit by Hubbell, Slack & Co. against A. M. Liddell & Co., wherein garnishment was sued out against the Farmers' Union Cotton Company and the First State Bank & Trust Company of Wichita Falls, and the First National Bank of Wichita Falls intervened. From a judgment in the garnishment suit that plaintiff take nothing, and that the First National Bank of Wichita Falls re-

cover of the garnishee an amount of money, plaintiff appeals. Affirmed.

G. P. Dougherty, of Houston, for appellant. Carrigan, Montgomery & Britain, of Wichita Falls, for appellees.

BROOKE, J. It is admitted that the following is a correct statement of the nature and result of the suit:

"This suit was originally filed on June 23, 1914, by Hubbell, Slack & Co., appellant, in the Fifty-Fifth district court of Harris county, against A. M. Liddell & Co., to recover a debt, and was numbered 63447 on the docket of said court, and on July 16, 1914, and in the same case, a garnishment was sued out and on the same day served upon the Farmers' Union Cotton Company, a garnishee; that on October 22, 1915, Hubbell, Slack & Co., appellant herein, recovered a judgment against A. M. Liddell & Co. for the sum of $3,314.13, and costs, amounting to $17.65, and the garnishment proceeding styled Hubbell, Slack & Co. v. Farmers' Union Cotton Company, garnishee, and numbered 63447A on the docket of said court, was transferred to Sixty-First district court of Harris county. After the institution of the garnishment proceeding against the Farmers' Union Cotton Company, the First State Bank & Trust Company of Wichita Falls, Tex., intervened, claiming title to the proceeds of the sale of the cotton which had been placed in the possession of the garnishee by A. M. Liddell & Co. On the trial of the case the First National Bank of Wichita Falls, Tex., intervened, claiming all the right or interest of the First State Bank & Trust Company of Wichita Falls by assignment since the institution of the suit. This case was tried on March 1, 1916, and judgment was rendered on said date adjudging that appellant (plaintiff), Hubbell, Slack & Co. take nothing by its suit, and that the intervener, First National Bank of Wichita Falls have and recover of the garnishee, Union Cotton Company, the sum of $3,939.55, being the amount of the fund in its hands, the same being the proceeds of the sale of cotton placed in its hands by A. M. Liddell & Co., and that Hubbell, Slack & Co., pay all costs of this suit. To which judgment the appellant duly excepted, and in open court gave notice of appeal, and has perfected its appeal to this court, and has assigned errors."

The case was tried before the court, and the following are the court's findings of fact and conclusions of law:

"Findings of Fact.

"(1) I find that the original suit to which this suit is ancillary, styled Hubbell, Slack & Co. v. A. M. Liddell & Co., and numbered 63447, was filed in the Fifty-Fifth district court of Harris county, Tex., on June 23, 1914, by Hubbell, Slack & Co., plaintiff herein, against A. M. Liddell & Co., a firm composed of A. M. Liddell and W. B. Swift, to recover a debt.

"(2) I find that after the institution of said original suit—style and number given in the preceding finding—to wit, on July 16, 1914, the plaintiff in said suit filed an affidavit and bond in garnishment in due form against the garnishee, Farmers' Union Cotton Company, and on the 16th day of July, 1914, a writ of garnishment in regular term was issued in said cause, and was served upon the garnishee, Farmers' Union Cotton Company, which said garnishment proceeding was and is ancillary to the original suit, styled Hubbell, Slack & Co. v. A. M. Liddell & Co., and numbered 63447 on the docket of the Fifty-Fifth district court

of Harris county, and the said garnishment suit in which these findings are filed is styled Hubbell, Slack & Co. v. Farmers' Union Cotton Company, and numbered 63447A on the docket of the Fifty-Fifth district court of Harris county.

"(3) I find that in said original suit in the said Fifty-Fifth district court, styled Hubbell, Slack & Co. v. A. M. Liddell & Co., and numbered 63447, the plaintiff, Hubbell, Slack & Co., on October 22, 1915, recovered a valid judgment against A. M. Liddell and W. B. Swift for the sum of $3,814.13, and all costs of suit, amounting to the further sum of $17.65, and I further find that said judgment is still unsatisfied, and I further find that after said final judgment was rendered in said original suit that the garnishment suit ancillary to it, styled Hubbell, Slack & Co. v. Farmers' Union Cotton Company, and numbered 63447A, was transferred from the Fifty-Fifth district court to the Sixty-First district court of Harris county.

"(4) I find that on or about the 23d day of May, 1914, A. M. Liddell & Co. had in their possession 64 bales of cotton, and this possession was evidenced by bills of lading issued by different railroad companies to A. M. Liddell & Co., and it appears from these bills of lading that said A. M. Liddell & Co. were owners and consignors of the cotton, and the cotton was shipped to Houston, Tex., and was billed to 'shipper's order,' and each and all of these bills of lading were indorsed by A. M. Liddell & Co., consignees of said cotton, in blank; and I further find that the said A. M. Liddell & Co. had made contracts to sell parts of this cotton to several different parties in Houston, among which was the plaintiff, Hubbell, Slack & Co., the several contracts aggregating the entire 64 bales of cotton, and I further find that the said A. M. Liddell & Co. drew a draft on each purchaser for the contract price of the cotton sold to each respective purchaser, with a bill of lading attached describing the cotton sold, one of which drafts was drawn on said Hubbell, Slack & Co., and all of the drafts were indorsed in blank by A. M. Liddell & Co., the drawers of said drafts, and all of these drafts with the bills of lading attached were delivered to the First State Bank & Trust Company of Wichita Falls, Tex., on or about this date, and by agreement between the said A. M. Liddell & Co. and said bank the said bank gave credit to the account of A. M. Liddell & Co. upon its books for the full amount of the aggregate of said drafts, less the amount of exchange on said drafts, and the said amount so credited to the account of the said A. M. Liddell & Co. on the books of said bank was afterwards, prior to June 17, 1914, checked out of said bank by the said A. M. Liddell & Co. The said First State Bank & Trust Company sent the said drafts with the bills of lading attached to its correspondent, South Texas Commercial National Bank, at Houston, Tex., and said drafts with the bills of lading attached were presented to the respective purchasers or parties who had contracted to buy said cotton, including Hubbell, Slack & Co., and the said parties refused to pay the drafts and refused to accept the cotton, and that Hubbell, Slack & Co. did not notice or have any knowledge in whose favor said drafts were drawn, indorsed, or presented. The drafts and bills of lading were returned to the First State Bank & Trust Company of Wichita Falls, Tex. Soon after this the bills of lading were sent by the last-named bank to the South Texas Commercial National Bank of Houston, Tex., with instructions to deliver the bills of lading showing the ownership and possession of the said 64 bales of cotton to the said A. M. Liddell & Co. or A. M. Liddell, of the last-named firm. The South Texas Commercial National Bank, on or about the 17th day of June, 1914, delivered to the said A. M. Liddell, of the firm of A. M. Liddell & Co., or

Swift & Liddell, the bills of lading for said bales of cotton, and took from said Liddell his receipt therefor reading as follows:

"'Houston, Texas, June 17, 1914.

"'Received in trust from South Texas Commercial National Bank, Houston, Texas, bills of lading for sixty-four (64) bales of cotton, which were attached to drafts of A. M. Liddell & Co. on Hubbell, Slack & Co. and Gohlman, Lester & Co., total $4,243.23. Description of drafts and Bs/L on the back of this receipt, for the purpose of sale of cotton covered by these bills of lading, the proceeds of which we promise to deposit in the above named bank for the credit of the First State Bank & Trust Company of Wichita Falls, Texas, as soon as sold.        [Signed]  Swift & Liddell,
                        "'By A. M. Liddell.'

"On the reverse side of the paper upon which the above receipt was written appeared a memorandum description of the various bills of lading representing said cotton. The said A. M. Liddell, acting for Swift & Liddell or Liddell & Co., then delivered said bills of lading to the garnishee, Farmers' Union Cotton Company, acting by and through its duly authorized representative, E. A. Calvin, and at the time of such delivery the said Calvin signed a receipt for the same underneath the memorandum description of said bills of lading written on the reverse side of the receipt above set out, which Liddell had given to the South Texas Commercial National Bank, such reverse side, after the receipt of the garnishee had been affixed thereto, then reading as follows:

Wichita Falls, Texas.

Wichita Valley Ry. Co. B/L 6/11/14 #d 83
covering 2 B/C Lidd                  917 lbs.
        Kave
Consigned to S/O A. M. Liddell & Co.
M. K. & T. Ry. Co. of Texas B/L 6/11/14 D93
Covering 11 B/C Lidd 5055 Lns.
        Kave
Consigned to S/O (A. M. Liddell & Co.)
Draft on Gohlman, Lester & Co. $520.00
M., K. & T. Ry. Co. B/L 6/9/14 D 355
Covering 11 B/C Lidd 3,794 Lbs.     Greenville, Texas.
        Root
"       1   "  Mood  539   "
Draft on Hubbell, Slack & Co.        $751.28
S/O A. M. Liddell & Co.
Texas Midland Railroad B/L 6/4/14 D 142
21 B/C Lidd                11,936 lbs.
        Mood                        Greenville, Texas.
13  "   Addo              7,553  "
 4  "   Root              2,396  "
Consigned to S/O (A. M. Liddell & Co.)
Draft on Hubbell, Slack & Co. $2,904.33
M., K. & T. Ry. Co. of Texas B/L 6/6/14 D 148
1 B/C Lidd                 483 lbs.     Dallas, Texas.
        Mood
Consigned to S/O (A. M. Liddell & Co.)
Draft Hubbell, Slack & Co.        $67.62.
All of the above shipper's order, bills of lading notify Gohlman, Lester & Co. and Hubbell, Slack & Co., Houston, Texas; destination Houston, Texas.
Received from Swift & Liddell the above described property, proceeds to be deposited in the South Texas Commercial National Bank.
        [Signed] Farmers' Union Cotton Co.,
                        By E. A. Calvin.

"At the time the said A. M. Liddell delivered said bills of lading to the Farmers' Union Cotton Company and took said receipt therefor, he made and entered into a contract with said Farmers' Union Cotton Company for and on behalf of the said A. M. Liddell & Co., or Swift & Liddell, to take possession of, store, handle and sell said 64 bales of cotton, as commission merchants, and soon after the delivery of the said bills of lading by the said A. M. Liddell to the garnishee herein the said garnishee took actual possession of said 64 bales of cotton and stored the same in its warehouse

at Houston, Tex. At the time the said E. A. Calvin, acting for the garnishee, Farmers' Union Cotton Company, received said bills of lading and signed said memorandum receipt therefor above referred to and set out, he did not read the receipt of Liddell to the South Texas Commercial National Bank on the reverse side of said paper, and had no knowledge or intimation thereof, or that such a receipt had been given, and had no notice thereof, except such constructive notice, if any, as the law might impute to him, or charge him with, by reason of the fact that the receipt which he gave to Swift & Liddell was written upon the reverse side of the receipt which Liddell had theretofore given to the bank for said bills of lading, without the said Calvin actually reading or knowing anything about what was on the reverse side thereof, or that such a receipt had been given.

"(5) I further find that the said Farmers' Union Cotton Company, after receiving the said bills of lading from the said A. M. Liddell & Co., and after actually receiving said cotton and storing the same, made sales of said cotton under and in accordance with its said contract made with A. M. Liddell & Co., by and through A. M. Liddell, acting on behalf of the said firm, on or about June 17, 1914, and I further find that 53 bales of said cotton were sold on or about July 9, 1914, and that on July 22, 1914, 11 bales of said cotton were sold, and that on December 17, 1914, the said garnishee sold the remainder of said cotton, and that these sales were made while the cotton was in the actual possession of the said garnishee, under its said contract with A. M. Liddell & Co., and that the purchase price of said 64 bales of cotton in the aggregate, after deducting the freight, broker's commission, and other expenses, amounted to the sum of $3,939.55, and that the said garnishee, by agreement of parties, deposited this amount of money as a special deposit in and with the Houston National Exchange Bank of Houston, Tex., under an agreement made and entered by and between the parties to this litigation and the said bank that the amount of said deposit should be paid to the party to whom the title of said funds might be adjudged in this litigation.

"(6) I find that the plaintiff, Hubbell, Slack & Co. had no knowledge or notice at the time the writ of garnishment in this cause was served on the garnishee, Farmers' Union Cotton Company, that the intervener, First State Bank & Trust Company of Wichita Falls, Tex., had any claim to or lien upon the 64 bales of cotton, or the proceeds of the sale of the cotton placed in the possession of the said garnishee by A. M. Liddell & Co.

"(7) I find that the garnishee, Farmers' Union Cotton Company, received the 64 bales of cotton from A. M. Liddell & Co., believing the cotton to be the property of A. M. Liddell & Co., and held the cotton as the property of A. M. Liddell & Co. and held the proceeds of the sale of said cotton after said cotton was sold, as the property of the said A. M. Liddell & Co., and the said Farmers' Union Cotton Company did not have any notice or knowledge at the time of receiving the said cotton that the First State Bank & Trust Company or any other person, other than A. M. Liddell & Co. had any claim to or lien upon said cotton, unless some constructive notice was imputed or charged to said garnishee, Farmers' Union Cotton Company, by reason of the facts heretofore found in the fourth finding of fact herein in reference to the signing of the receipt given by E. A. Calvin to A. M. Liddell for said bill of lading.

"(8) I find that after said 64 bales of cotton had been received by the garnishee, Farmers' Union Cotton Company, and before a sale of said cotton had been made the said garnishee, Farmers' Union Cotton Company, was inform-ed by the said intervener, First State Bank & Trust Company of Wichita Falls, of its claim to said cotton by reason of its ownership of the draft and bills of lading attached, but I find that the said garnishee continued to hold said cotton, and, after its sale, the proceeds of the sale of said cotton, as the property of A. M. Liddell & Co.

"(9) I find that A. M. Liddell & Co. and Swift & Liddell are different names for and referring to the same copartnership, composed of A. M. Liddell and W. B. Swift, and I further find that during the pendency of this suit the First State Bank & Trust Company of Wichita Falls has transferred and assigned its interest in the subject-matter herein to the First National Bank of Wichita Falls.

### "Conclusions of Law.

"(1) I conclude from the facts found that the First State Bank & Trust Company of Wichita Falls, Tex., had a valid lien upon the 64 bales of cotton above referred to to secure the money paid by it to A. M. Liddell & Co. upon the drafts attached to the bills of lading for said cotton, and that its assignee, the First National Bank of Wichita Falls, intervener herein, is entitled to the proceeds of the sale of said cotton now in the hands of the garnishee.

"(2) I conclude from the facts found that the service of the writ of garnishment upon the garnishee, Farmers' Union Cotton Company, did not fix a lien upon said cotton, or the proceeds of the sale thereof, superior to the lien existing in favor of the First State Bank & Trust Company of Wichita Falls, securing the money which it had advanced to A. M. Liddell & Co. upon the drafts and bills of lading attached thereto.

"(3) I conclude that judgment should be rendered herein in favor of the First National Bank of Wichita Falls for the fund in the hands of the garnishee."

The assignments are grouped, and will be considered as one, being as follows:

(a) "The court erred in its first conclusion of law, which said conclusion of law is as follows, to wit: 'I conclude from the facts found that the service of the writ of garnishment upon the garnishee, Farmers' Union Cotton Company, did not fix a lien upon said cotton, or the proceeds of the sale thereof, superior to the lien existing in favor of the First State Bank & Trust Company of Wichita Falls securing the money which it had advanced to A. M. Liddell & Co. upon the drafts and bills of lading attached thereto.'"

(b) "The trial court erred in its second conclusion of law, which said conclusion of law is as follows, to wit: 'I conclude from the facts found that the service of the writ of garnishment upon the garnishee, Farmers' Union Cotton Company, did not fix a lien upon said cotton, or the proceeds of the sale thereof, superior to lien existing in favor of the First State Bank & Trust Company of Wichita Falls securing the money which it had advanced to A. M. Liddell & Co. upon the drafts and bills of lading attached thereto.'"

(c) "The trial court erred in its third conclusion of law, which is as follows, to wit: 'I conclude that judgment should be rendered herein in favor of the First National Bank of Wichita Falls for the fund in the hands of the garnishee.'"

(d) "The trial court erred in rendering judgment herein in favor of the intervener, the First National Bank of Wichita Falls, Tex., and against the plaintiff, Hubbell, Slack & Co."

(e) "The trial court erred in failing and refusing to render judgment in favor of the plaintiff, Hubbell, Slack & Co., and against the defendant garnishee, Farmers' Union Cotton Com-

pany, for the sum of $3,331.78, the same being the amount of the judgment recovered by the plaintiff, Hubbell, Slack & Co., against the defendants W. B. Swift and A. M. Liddell in the Fifty-Fifth district court of Harris county, Tex., on October 22, 1915, in cause No. 63447, styled Hubbell, Slack & Co. v. A. M. Liddell & Co. on the docket of said court, and costs therein incurred, for the reason that by the undisputed proof in the case and by the facts found the legal title to and ownership of said cotton was in the said A. M. Liddell & Co., and that the intervener, First State Bank & Trust Company of Wichita Falls, Tex., held possession of said cotton as security for the payment of the drafts attached to the bills of lading representing said cotton, and that the said First State Bank & Trust Company of Wichita Falls, Tex., delivered the possession of said cotton to A. M. Liddell & Co., and that a part of said cotton and the proceeds of the sale of said cotton were in the possession of said A. M. Liddell & Co. at the time of the issuance and service of the said writ of garnishment, and by the service of the said writ of garnishment the plaintiff, Hubbell, Slack & Co., acquired a lien upon said cotton and the proceeds of the sale of said cotton superior to claim of the said First State Bank & Trust Company of Wichita Falls, Tex., and that the said First State Bank & Trust Company of Wichita Falls, Tex., by failure to hold actual continuous possession of said cotton pledged to it, and that as the cotton pledged to the said First State Bank & Trust Company of Wichita Falls, Tex., was not followed by an actual and continued change of possession of the said cotton the service of the writ of garnishment upon the Farmers' Union Cotton Company, who held possession of said cotton for A. M. Liddell & Co., had the effect to fix a superior lien upon the cotton and the proceeds of the sale of the cotton in its hands."

The assignments will be considered on two propositions, viz.:

(1) It is contended that the property of the debtor in the hands of the garnishee after the service of a writ of garnishment is in custodia legis, as the garnishee becomes the receiver of the court and holds the property subject to the orders of the court, and failure to account by the garnishee for the property in his hands at the time of the service of the writ of garnishment can be punished as for contempt, and he is liable to the creditor as for conversion of security.

(2) Garnishment, it is claimed, is a mode of attachment, and the service of a writ of garnishment upon a person having property of the debtor in his possession creates a lien upon such property superior to that of an unrecorded mortgage or that of a pledgee who has not held continuous possession of the pledge and has permitted the pledgor to retain possession of the property pledged.

These propositions are strenuously urged by the appellant. On the contrary, it is urged by appellee that the service of a writ of garnishment has the effect only of substituting the garnishing creditor for the defendant in the original suit as to any debts, claims, or property belonging to such defendant, and does not give plaintiff in garnishment any higher right or claim than that of the defendant in the original suit, and in no manner affects the claims or rights of third persons, and that the service of a writ of gar-

nishment is not an attachment of any particular property, and the plaintiff in garnishment is not such a lien creditor as gives him any superior right to any property in the hands of the garnishee as against any claimant or lienholder whose rights attached prior to the service of the garnishment.

[1] We think it is the settled law of this state that a garnishment cannot, under any circumstances, confer upon the plaintiff in garnishment any higher right than the defendant in the original suit, or, in other words, that the plaintiff in garnishment succeeds to the rights of the original defendant against the garnishee, and that he can have no greater rights as against the garnishee than the original defendant had. In the case of Phœnix Ins. Co. v. Willis, 70 Tex. 12, 6 S. W. 825, 8 Am. St. Rep. 566, and as laid down in the case of Burns v. Lowe, 161 S. W. 942:

"Appellants, as garnishing creditors, could occupy no better position with reference to the fund than did their debtor at the time of the service of the writ."

In the case of Moore v. U. S. F. & G. Co., 52 Tex. Civ. App. 286, 113 S. W. 947, it is said:

"The garnishment operated merely to substitute the plaintiff in garnishment pro tanto to the rights of Moore & Bridgman."

In 20 Cyc. p. 1062, the following language is used:

"By unanimous opinion the general rule is that a person who has acquired a lien upon the property of the principal defendant in the hands of the garnishee, or upon the debts due from such garnishee, occupies no better position as regards subsisting adverse claims to such property or debt than does a purchaser or assignee with notice; and a plaintiff causing a writ of garnishment to be served upon the debtor of the principal defendant acquires a lien upon the property of or debts due to the principal defendant subject to prior valid rights and liens against such property or debt."

This text is supported by the authorities, and approved in the case of Bank v. Setzer, 185 S. W. 596. In Hall v. Nunn Electric Co., 183 S. W. 13, the following language is used:

"It is a fundamental rule that the plaintiff in garnishment steps into the shoes of his judgment debtor; if nothing is owing to the latter, the former * * * is entitled to nothing."

In the case of Focke v. Blum, 82 Tex. 437, 17 S. W. 770, the court announced that the attaching creditor could acquire no greater right in or to the property than that possessed by the debtor at the time of the levy. This was said with reference to a garnishment creditor, the court treating garnishment as a species of attachment. See, also, Smith v. T. & P. Ry. Co., 39 S. W. 969.

We believe that the contentions of appellee, as last set out, are sound in principle, and that they announce the correct rule, as laid down by the courts of this state.

[2] It is contended that the cotton referred to in the court's findings of fact was the property, at the time of its sale, of the First State Bank & Trust Company of Wichita

Falls, and the garnishee held the same and sold it for them, and the proceeds of sale, it is contended, was the property of said bank, and not subject to garnishment as the property of Swift & Liddell, or Liddell & Co.

In the case of McMahan v. Bank, 160 S. W. 403, and which seems to be largely identical with the instant case, the court uses this language:

"The facts, briefly stated, are: D. V. Liddell & Co., cotton buyers of some sort, called 'scalpers,' were dealing in Shawnee, Okl., and vicinity. They approached the State National Bank of Shawnee and obtained a verbal agreement from that bank to honor drafts drawn upon them with bills of lading for cotton attached; such drafts to be accepted by them, and the cotton to be held by the bank and sold jointly by it and the Liddells, from the proceeds of which sales the bank was to be reimbursed. The Liddells had no account with the bank at any time, but had executed to it a note and mortgage on personal property to secure possible deficiencies in the cotton sales.

"In pursuance of this agreement the Liddells' agents bought cotton from various persons who drew drafts for the price of the cotton. These drafts were drawn upon the Liddells in favor of either the shippers or the banks through which they were drawn. In due course of business they came to the State National Bank of Shawnee with bills of lading attached. They were accepted by the Liddells and paid by the bank. The bills of lading were all to shippers' order, and the bills of lading and the drafts were all held by the bank subject to its agreement with the Liddells.

"Prior to October 17, 1910, J. C. Liddell, Jr., one of the parties to the contract, made an agreement to sell, or did sell, the cotton in question to B. W. McMahan & Co., appellants in this case, without the knowledge or consent of the bank. On October 17th J. C. Liddell, Jr., went to the bank and, at his request was given possession of the bills of lading 'so that he might pay the freight and obtain compress receipts for the cotton.' He promised to perform this service and bring the compress receipts back to the bank at once. The bills of lading were given to him for that purpose and his receipt taken therefor. He took them to the railroad company and obtained the compress receipts, but, instead of returning with them to the bank, he delivered the receipts to McMahan & Co., who, by virtue of the receipts, took possession of the cotton. McMahan & Co., in buying the cotton, acted in good faith, without knowledge of the theft of the bills of lading and compress receipts by Liddell, and they paid full value for the cotton. The bank did not discover the theft of the bills of lading until about October 25th, when upon inquiry it discovered that the cotton had been sold to McMahan & Co., and that it was then in Galveston in custody of the Mallory Steamship Company, consigned by McMahan & Co. to parties in New York. Judgment was rendered by the court below in favor of the bank, and this appeal is prosecuted by McMahan & Co.

"Appellants' first assignment of error insists that McMahan & Co. purchased the cotton in open market, from a regular dealer, at a full price, in the usual course of trade, and without notice of any right, title, or interest of the bank, and that therefore it took a good title to the cotton with the right to possession. If this is a case in which the doctrine of innocent purchaser could apply, appellants' contention is unanswerable. But is it such a case? The relation of the parties to the transaction and the character of the property involved are important matters to consider in resolving the question. The first points to be determined are: Was the title to the cotton ever vested in the appellee bank, and, if so, was the possession by Liddell of the bills of lading and compress receipts in the manner in which he acquired them indicia of title which would vest his vendee, an innocent purchaser for value, with a title superior to that of the bank? In answering these questions it becomes necessary to determine the nature of a bill of lading in its relation to commercial usages. It is well settled that a bill of lading is only quasi negotiable, being the representative of personal property, and not of money. The transfer of a bill of lading has only the effect of transferring the title to, and the constructive possession of, the very goods for which the bill is a representative. The bills of lading in this case were issued to the owners of the cotton and were drawn to 'shipper's order,' and consigned to Liddell & Co. The term 'shipper's order' is well understood in commercial usage, and means that the title remains in the shipper until he has ordered a delivery of the goods. The bills of lading in question were indorsed in blank by the shippers and attached by them to drafts drawn upon Liddell & Co. for the price of the cotton. In the drafts either the shippers themselves or the banks through which they were transmitted were made payees. The drafts came to the appellee bank in due course of business, were accepted by the Liddells, and paid by appellee. The cotton was never at any time actually or constructively in the custody or control of the Liddells. No vestige of title or interest in the cotton ever vested in the Liddells. The only way they could have acquired an interest in the cotton was to pay the drafts held by appellee, when under their contract the bills of lading must have been turned over to them. Dows v. National Bank of Milwaukee, 91 U. S. 637, 23 L. Ed. 214. Liddell & Co. did not pay the drafts, and no title ever vested in them unless the delivery of the bills of lading to J. C. Liddell, Jr., under the circumstances in this case was sufficient to vest them with title.

"It is too well settled for discussion that a bank which pays a draft attached to a shipper's order bill of lading, indorsed in blank, becomes the owner of the goods represented thereby. Such ownership invests it with title to, and constructive possession of, the goods, and actual delivery to it is unnecessary to perfect the proprietorship. Therefore, under the facts as above stated, the appellee bank was at the time the bills of lading were taken by J. C. Liddell, Jr., the owner and in possession of the 100 bales of cotton in question. Adoue v. Seeligson, 54 Tex. 593; Dows v. National Bank of Milwaukee, supra; Bank v. Bank, 41 Tex. Civ. App. 535, 93 S. W. 209; Campbell v. Alford, 57 Tex. 159. The many cases cited and discussed by the above cases render further citations here unnecessary.

"Cotton compress receipts in the course of such business as is here revealed are simply warehouse receipts, and the legal status of the warehouse receipt is identical with that of a bill of lading in so far as its sale or transfer carries the constructive delivery and ownership of the goods for which it stands. Clay v. Gage, 1 Tex. Civ. App. 661, 20 S. W. 948; 40 Cyc. 407, and cases cited; Stamford Compress Co. v. Farmers' & Merchants' Bank [105 Tex. 44], 144 S. W. 1132 [Ann. Cas. 1914D, 1298], and cases there cited.

"If, then, the appellee bank was the legal owner and holder of the cotton on October 17, 1910, and up to that time Liddell & Co. never had any right or title thereto, was the delivery of the bills of lading by the bank to J. C. Liddell, Jr., on that day such a delivery or transfer of the title to, or possession of, the cotton as to vest in an innocent purchaser from him a good title against the bank? This question can only be answered in the negative. As has been shown, a bill of lading is not like a bill of exchange, carrying to the purchaser in good faith, by mere indorsement and delivery, a title good against

the world. The transfer of the bill of lading delivers but the goods, and passes to the purchaser no better title than the seller had. The sale of found or stolen property, or property obtained by fraud, vests no better title because the sale is made through the means of an instrument called a bill of lading. A bill of lading is but a receipt for specific goods, and when Liddell sold to McMahan & Co. he sold them the cotton of which he was the tortious, if not felonious possessor, and they took the title he had and no more. Stollenwerck v. Thacher, 115 Mass. 224; Shaw v. Merchants' & National Bank, 101 U. S. 557, 25 L. Ed. 892; 6 Cyc. 418 to 424, and cases there cited; Bank v. Luttgen, 29 Minn. 363, 13 N. W. 151; Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998. The first assignment of error is overruled, and what has been said disposes also of assignments Nos. 2, 3, 4, 4½, 5, and 7, and they are overruled.

"But appellants contend, in their sixth assignment of error, that the bank was, by its own negligence in trusting the bills of lading to the custody of J. C. Liddell, Jr., estopped to deny his right to sell. They admit that they did not assert the defense of estoppel, but contend that their plea of innocent purchaser for value, considered with the petition of the plaintiff, was sufficient to raise the issue in their behalf, although not specifically set up in their pleading. They contend that the appellee in its original petition alleged its own negligence when it stated that it 'intrusted the bills of lading to J. C. Liddell, Jr.,' and that to complete their defense of estoppel they had but to show under their plea that McMahan & Co. had bought from Liddell in good faith, for value, and without notice.

"Estoppel is an affirmative defense, and under our practice, from the earliest date, it had been held that an affirmative defense must be specially pleaded. In the case of Smith v. Sherwood, 2 Tex. 461, our Supreme Court said it should be known by this time that all affirmative defenses should be specially pleaded. Keeble v. Black, 4 Tex. 69; Scarbrough v. Alcorn [74 Tex. 358, 12 S. W. 72]; Barker v. Abbott, 2 Tex. Civ. App. 147, 21 S. W. 72; Rail v. Bank, 3 Tex. Civ. App. 557, 22 S. W. 865; Hollifield v. Landrum, 31 Tex. Civ. App. 195, 71 S. W. 979; Casey v. Treadwell, 32 Tex. Civ. App. 480, 74 S. W. 791; Tex. Produce Co. v. Turner (Sup.) 27 S. W. 583; Stanger v. Dorsey, 22 Tex. Civ. App. 573, 55 S. W. 129; Anderson v. Nuckles, 34 S. W. 184. The trial court held that the allegations of the pleadings were not sufficient to raise the issue of estoppel, and we must concur in that holding. However, if it should be conceded that the pleadings of the plaintiff can in this case be construed to supply an allegation omitted from the appellant's intervention, it must still be held that neither such allegation nor the facts was sufficient to show negligence of the bank in such manner as to estop it from denying the authority of Liddell to sell the cotton.

"The sixth assignment of error is therefore overruled. This also disposes of assignments Nos. 9 and 10 and the third proposition under assignments Nos. 3, 4, 4½, 7, 9, and 10.

"Appellants' eighth assignment of error and the fifth proposition under their eleventh assignment of error are overruled. They present questions as to the sufficiency of the evidence to support the findings of the trial court. There is evidence to support these findings, and it is not therefore within the province of this court to reverse them.

"We find no error in the judgment of the lower court, and the judgment is affirmed."

As above stated, the case seems to be almost directly in point, and we believe the court was correct in its holding. See, also, Adoue v. Seeligson, 54 Tex. 594; Daws v.

National Bank, 91 U. S. 637, 23 L. Ed. 214; Bank v. Bank, 41 Tex. Civ. App. 535, 93 S. W. 209; Campbell v. Alford, 57 Tex. 159; American Thresherman Co. v. De Tamble Motors Co., 154 Wis. 366, 141 N. W. 210, 49 L. R. A. 644, and notes, where all the authorities are collected; Shaw v. Merchants' Bank, 101 U. S. 557, 25 L. Ed. 892; Coker v. First National Bank, 112 Ga. 71, 37 S. E. 122; 31 Cyc. 818; Hood v. Bank, 12 Ala. App. 511, 67 South. 721.

It is further contended by the appellee that the First State Bank & Trust Company, having had the shipping order bills of lading indorsed and delivered it, and having paid the drafts drawn on Hubbell, Slack & Co. and Gohlman, Lester & Co., became the owner of and was actually in possession of the cotton, and when payment of the drafts was refused had the right to handle and sell the cotton for its own account, and it did not lose its rights to the cotton or its proceeds by delivering the same to the garnishee in order that the cotton might be sold and the proceeds paid to the bank's agent and correspondent at Houston, Tex. See McMahan v. Bank, supra.

It is further contended that under the facts found by the lower court the Farmers' Union Cotton Company, the garnishee, had the cotton in its possession as the agent or factor of the First State Bank & Trust Company, under an express contract to sell same and pay the proceeds to the bank's agent and correspondent, and the proceeds of the cotton when sold belonged to the bank, and was not subject to garnishment for the debt of Liddell & Co. or Swift & Liddell.

We believe that the bank had the title to the cotton. The facts as found by the court are that Liddell & Co. shipped the cotton and procured shipper's order bill of lading, and indorsed and delivered same to the bank, and at the same time drew drafts on the proposed purchasers of the cotton in favor of the bank, and that the bank paid Liddell & Co. the amount of said drafts. The purchasers refused to pay the drafts and take the cotton. This transaction had the effect of vesting the title to the cotton in the bank, either as owner or pledgee. In Adoue v. Seeligson, supra, the opinion being by Chief Justice Moore, it is said:

"To maintain their claim, it devolved upon them to show such title as precluded appellees from its seizure and sale under the attachment. This they claim they did by proof of a valid and bona fide transfer and delivery of it as a pledge by Arbuckle to themselves prior to the date of the attachment. And this presents the real, and indeed the only, question in the case. For although appellees seem in one part of their brief to insist that, if appellants had proved that the cotton had been bona fide transferred to them as a mortgage or pledge for money advanced to Arbuckle by them, still they did not have such title as would prevent its seizure and sale under attachment or execution, but all that could be claimed for them would be that such seizure and sale would be subject to their prior lien. But this we understand them is when they are speaking of a pledge in a general sense, as in-

dicating merely a lien or security for a debt, and not when it is accompanied with the complete and absolute transfer of the title and possession of the pledge. For it seems to be fully admitted in other parts of their brief, and certainly cannot be successfully denied, that in such case the contingent interest of the previous owner can no more be reached by attachment or execution than if the transfer had been in every respect absolute and unconditional."

In the case of Guaranty State Bank of Timpson v. W. D. Cleveland & Sons, 195 S. W. 939, recently decided by this court, and not yet officially published, the case of Mercantile Banking Company v. Landa, 33 S. W. 681, was quoted as conveying the opinion of this court, as follows:

"Appellant's title to the property was based upon an indorsement to it of the bill of lading, and a delivery thereof, which it claimed was made prior to the levy of the writ of attachment. Appellee joined issue on this proposition, and in effect asserted that the bill of lading was not indorsed until after the levy of the attachment. Appellee, in addition, sought to show by evidence of custom that the title to the property remained in the shipper or consignee; and as the property was shipped by Harris, and in effect consigned to him in the bill of lading issued by the railway company, he was the owner. The issue raised by the appellant was: Did it have a title by reason of the indorsement of the bill of lading? And, under the case as presented by its pleadings, if it did not have title by virtue of that fact, then the appellee should recover, and evidence of custom would not aid him in this respect, and the court should not have presented such an issue. The law gives to a transfer by indorsement of a bill of lading, accompanied by a delivery of it, the effect of passing title to the property shipped. Railway Co. v. Heidenheimer, 82 Tex. 199, 17 S. W. 608 [27 Am. St. Rep. 861]. A title thus acquired is as effectual in law as it would be if based upon an express and completed contract of sale."

[3] From what has been said, we are of opinion that the chattel mortgage statute has no application in this case, that the statute is but declaratory of the common law that a pledgee ordinarily loses his lien by redelivering possession to the pledgor, but this principle does not apply to the delivery to the pledgor for a special purpose.

We are of opinion that the conclusion reached by the court was correct. We have examined the record carefully, and, so believing, the cause is in all things affirmed.